# PRESIDENT, MANAGERS, AND COMPANY OF THE MONONGAHELA BRIDGE COMPANY v. UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF PENNSYLVANIA.

No. 91.   Argued January 19, 1910.—Decided February 21, 1910.

Congress may, in order to enforce its enactments, clothe an executive officer with power to ascertain whether certain specified facts exist and thereupon to act in a prescribed manner, without delegating, in a constitutional sense, legislative or judicial power to such officer.

Under its paramount power to regulate commerce, Congress can require navigable waters of the United States, although within a State to be freed from unreasonable obstructions; and it is not a delegation of legislative or judicial power to charge the Secretary of War with the duty of ascertaining, under a general rule applicable to all navigable waters and upon notice to the parties in interest, whether a particular bridge is an unreasonable obstruction to navigation.

An act of Congress which invests the Secretary of War with power to require the removal of obstructions to navigation after notice to parties in interest and opportunity to be heard and reasonable time to make alterations in the obstruction, as § 18 of the River and Harbor Act of March 3, 1899, 30 Stat. 1151, does not invest the Secretary with arbitrary power beyond constitutional limitations.

To require, after notice and hearing, alterations to be made within a reasonable time and in a bridge over such navigable waters so as to prevent its being an obstruction to navigation, is not a taking of private property for public use which, under the Constitution, must be preceded by compensation made or secured to the owners of the bridge.

The erection of a bridge over such navigable waters within a State by authority of the State is subject to the paramount authority of Congress to regulate commerce among the States and its right to remove unreasonable obstructions to navigation.

The mere silence of Congress, and its failure to interfere to prevent the construction under state authority of an obstruction to navigation does not prevent it from subsequently requiring the removal of the obstruction or impose upon the United States a constitutional obligation to make compensation therefor.

It is for Congress, under the Constitution, to regulate the right of navigation in navigable waters of the United States and to declare what must be done to clear navigation from obstructions; and where this has been done in the manner required by Congress it is not the province of the jury, on the trial of one refusing to remove obstructions, to determine whether the removal was necessary.

An act will not be declared unconstitutional merely because an executive officer might, in another case, act arbitrarily or recklessly under it. If such a case arises the courts can protect the rights of the Government or persons which are based on fundamental principles for the protection of rights of property.

THE facts are stated in the opinion.

*Mr. David Watson*, with whom *Mr. James H. Beal* was on the brief, for plaintiff in error:

The court below erred in refusing the offer of the Bridge Company to prove that the bridge was not an unreasonable obstruction to the navigation of the river, and that the changes in the bridge ordered by the Secretary of War were not necessary; and in also ruling that the proceedings before the Secretary of War were conclusive, and not subject to the examination of the courts.

No citizen can be deprived of his property through such a mental impression of the Secretary, merely because he has good reason to believe it was an obstruction. To have good reason to believe does not involve a definitive conclusion that he does believe the bridge is unreasonable, for there may be better good reasons to show it is not.

All trials in courts of justice where the private property of a citizen is involved must be in accordance with due process of law. This the Fifth Amendment requires. Even if due process of law does not always require judicial proceedings, still when Congress expressly confers jurisdiction upon the courts, then to the extent of that jurisdiction the courts will proceed to perform their duty in accordance with their own settled rules and maxims. They will always administer justice by due process of law.

As to what is due process of law see *Twining* v. *New Jersey,* 211 U. S. 78, 101; *C., B. & Q. Ry.* v. *Chicago,* 166 U. S. 226, 234; *Londoner* v. *Denver,* 210 U. S. 373, 386; *Hagar* v. *Reclamation District,* 111 U. S. 707.

The owners of the bridge were being tried charged with a crime. It was a criminal trial and the defendant was charged with a misdemeanor. Under Art. III, § 2, Amendment VI, Fed. Const., the trial of all crimes shall be by jury.

As to the citizen's right to a fair, full trial in court before he can be convicted of a crime, see among others, *Kilbourn* v. *Thompson,* 103 U. S. 168, 182.

While the power to prescribe a reasonable rate for the future is a legislative function, the question whether a given rate violates the private property rights of an individual or a corporation is a judicial function, and cannot be delegated to an administrative or executive body. *Interstate Comm. Comm.* v. *Railway Co.,* 167 U. S. 493, 499; *Reagan* v. *Farmers' L. & T. Co.,* 154 U. S. 397, 399; *Prentis* v. *Atlantic Coast Line,* 211 U. S. 210, 226; *Rider* v. *United States,* 178 U. S. 251; *Salem* v. *Railroad Co.,* 98 Massachusetts, 461; *Miller* v. *Horton,* 152 Massachusetts, 540; *Stone* v. *Heath,* 179 Massachusetts, 385; *Lowe* v. *Conroy,* 120 Wisconsin, 151; *Pearson* v. *Zehr,* 138 Illinois, 48; *State* v. *Main,* 69 Connecticut, 123; *Gaines* v. *Waters,* 64 Arkansas, 609, 612; cases collected in Due Process of Law by McGehee, 372.

An executive board or committee or officer cannot conclude the owner of private property from proving in court that its conclusions are correct. *North American Storage Co.* v. *Chicago,* 211 U. S. 306; *Fisher* v. *McGirr,* 1 Gray, 36; *Commonwealth* v. *New Bedford Bridge Co.,* 7 Gray, 339; *Rosenberger* v. *Harris,* 136 Fed. Rep. 1003; *Turner* v. *Williams,* 194 U. S. 295; *Colon* v. *Lisk,* 153 N. Y. 188; *The People* v. *Yonkers,* 140 N. Y. 1.

Whether a nuisance exists is always ultimately a mixed question of law and of fact, to be determined by a court. Cooley's Const. Lim., 7th ed., 883; Dillon on Mun. Corp.,

4th ed., par. 374; Wood's Law of Nuisances, §§ 22, 483, 493; *Frostberg* v. *Hitchins*, 99 Maryland, 617, 628; *Hutton* v. *City of Camden*, 29 N. J. L. 122; *Texas* v. *St. Albans*, 38 W. Va. 19; *Yeates* v. *Milwaukee*, 10 Wall. 497; *The Mississippi R. R. Co.* v. *Ward*, 2 Black, 485, 492; *Health Department* v. *Trinity Church*, 145 N. Y. 32; *Bridge Co.* v. *United States*, 105 U. S. 470.

A public trial, such as Art. III and Amend. VI guarantees to the owner of a bridge being charged with a crime, necessarily involves the question of the guilt or innocence of the defendant, and the courts will not pass arbitrarily and convict arbitrarily, when the defendant offers to prove that he is not guilty of maintaining a nuisance, merely on the *ipse dixit* of the Secretary of War to the contrary. The courts must and will of themselves investigate and determine that question. *Callan* v. *Wilson*, 127 U. S. 540, 549, 557.

To accord to the accused a right to be tried by a jury, in an appellate court, after he has been once fully tried otherwise than by a jury, in the court of original jurisdiction, and sentenced to pay a fine or be imprisoned for not paying it, does not satisfy the requirements of the Constitution. *Schick* v. *United States*, 195 U. S. 65, 70; *Ex parte Milligan*, 4 Wall. 3, 121; *Schaezlein* v. *Cabaness*, 135 California, 466. See also *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Baltimore* v. *Radecke*, 49 Maryland, 217; *Railroad Co.* v. *Commonwealth*, 99 Kentucky, 136; *Railway Co.* v. *Dey*, 35 Fed. Rep. 866.

At common law the owner of a bridge charged with maintaining a nuisance was entitled to a jury trial on the question whether the bridge was an unreasonable obstruction to navigation. *Regina* v. *Betts*, 4 Cox C. C. 211, 213; *Regina* v. *Burt*, 11 Cox C. C. 399; *Rex* v. *Russell*, 6 Bar. & Cr. 566, 587, 595; *Regina* v. *Russell*, 3 El. & Bl. 942, 950; *Rex* v. *Tindall*, 6 Ad. & El. 143.

The Federal courts have jurisdiction to review the decisions of the executive departments on questions of law or of mixed law and fact, though no right of review is expressly given by statute. *Wis. Cent. Ry. Co.* v. *Forsythe*, 159 U. S. 46, 61,

citing *Johnson* v. *Towsley,* 13 Wall. 72; *Shepley* v. *Cowan,* 91
U. S. 330; *Quinby* v. *Conlan,* 104 U. S. 420; *Doolan* v. *Carr,*
125 U. S. 618, 624; *Lake Superior Ship Canal &c. Co.* v.
*Cunningham,* 155 U. S. 354; *School of Magnetic Healing* v.
*McAnnulty,* 187 U. S. 94, 108. To the same effect are *Cosmos
Co.* v. *Gray Eagle Co.,* 190 U. S. 301, 314; *Burfenning* v. *Ch.
& St. Paul Ry. Co.,* 163 U. S. 321, 323; *Johnson* v. *Drew,* 171
U. S. 93, 100; *Hardin* v. *Jordan,* 140 U. S. 377, 401; *William-
son* v. *United States,* 207 U. S. 425, 462; *United States* v. *Cop-
per Co.,* 196 U. S. 207, 214.

As to what due process of law is see Webster's definition
in the *Dartmouth College case* adopted in *Hovey* v. *Elliott,* 167
U. S. 418; *Stitzel's Estate,* 221 Pa. 230; *Reynolds* v. *United
States,* 98 U. S. 145, 154.

If the act of 1899 should be so construed as to authorize
the Secretary of War to apply his own rule in determining
whether a bridge was an unreasonable obstruction to naviga-
tion, and that rule was different from the rule established
in the *Escanaba Transportation case,* then the act of Congress
was unconstitutional because it vests in one and the same
person the legislative power to make the law and the judicial
power to determine whether the defendant had violated the
law, and this is inconsistent with our theory of government.
*Wong Wing* v. *United States,* 163 U. S. 228, 237; *Turner* v.
*Williams,* 194 U. S. 279, 291; *Interstate Comm. Comm.* v.
*Brinson,* 154 U. S. 447, 485.

The act of 1899 is unconstitutional.

It attempts to take and destroy the private property of
the Bridge Company without due process of law and to take
private property for public use without just compensation.

It undertakes to unlawfully delegate to the Secretary of
War and to the Chief of the Engineer Corps both legislative
and judicial powers.

If the statute is construed as was done in the court below
and the Secretary makes the law and then applies it to the
facts and finally decides, then it is unconstitutional, because

it does not furnish an ultimate resort to the courts for the bridge owner whose bridge is threatened. *Public Clearing House*, 194 U. S. 515. See cases. *supra; Union Bridge Co.* v. *United States*, 204 U. S. 387, does not apply.

The power delegated by the act of 1899 is not merely executive. The Secretary acts in a judicial capacity on a mixed question of fact and law. *Mississippi R. R.* v. *Ward*, 2 Black, 492; Woods on Nuisances, §§ 22, 493, 748.

This is a delegation by Congress to the Secretary of judicial functions and is illegal. *School of Magnetic Healing* v. *McAnnulty*, 187 U. S. 108.

The power of Congress in its regulation of commerce is limited by other clauses in the Federal Constitution. *Monongahela Navigation Co.* v. *United States*, 148 U. S. 312.

The word "taken" in the Fifth Amendment where the proceedings are under the interstate commerce clause, should not receive a strict technical, narrow definition which enables a great and wealthy nation to destroy the property of its citizen without compensation. *Pumpelly* v. *Green Bay Co.*, 13 Wall. 177.

To compel the owner to spend money in the reconstruction of his bridge, is taking his money as effectively as if the money was actually taken by some officer of the Government. *West Chicago Ry. Co.* v. *Chicago*, 201 U. S. 506.

The Government practically invited and acquiesced in the construction of the bridge. The bridge became really a part of a link in the National Pike which Congress built and over this bridge went the traffic coming to it and as a part of that Pike. It should not therefore be destroyed by the Government without compensation. *Monongahela Navigation Co.* v. *United States*, 148 U. S. 312.

Pennsylvania has never complained that the Bridge Company had disregarded the terms of its charter forbidding interference with navigation, and this, so far as the charter is concerned, is conclusive on the United States. It was erected in 1832, under the Act of the State, March 16, 1830,

P. L. 102, within the power of the State to authorize the structure. *People* v. *Rensalear R. R. Co.*, 15 Wend. 113, 131; *Wilson* v. *Blackbird*, 2 Pet. 250; *Willamette Iron Bridge Co.* v. *Hatch*, 125 U. S. 2; *Lake Shore Co.* v. *Ohio*, 165 U. S. 365; *Gilman* v. *Philadelphia*, 3 Wall. 713; *Mobile* v. *Kimball*, 102 U. S. 697.

The following conclusions should govern this case:

Neither the legislative nor the executive nor the judicial departments may invade the other;

No one of these departments may delegate its power to the other;

The legislative department makes the law; the judicial department construes the law, and the executive department enforces the law.

To some extent the judicial not only construes but enforces, as against the individual, the law, and punishes the individual for the violation of it;

The executive and the legislative departments are the political divisions of the Government, and in a general way between them they have charge of all political questions concerning the policies of the nation and relations of the nation to foreign powers, treaties with foreign powers, etc. The judiciary has charge of the construction of all laws which relate to the persons and the property of the individual citizen, and its chief purpose is the administration of justice, not only as between the individuals who compose society, but also as between governments (such as the United States and the state government) and between the individual and the State or the United States Government. *Patton* v. *Brady*, 184 U. S. 620; *Kilbourn* v. *Thompson*, 103 U. S. 182.

The existence of a nuisance always involves a question of law for the court. *Mississippi R. R.* v. *Ward*, 2 Black, 492; Wood on Nuisances, §§ 22, 493, 748.

If the act of 1899 be construed as giving to the Secretary of War the final power to pass upon and decide that the bridge is an unreasonable obstruction, and denies to the

citizen the right of appeal to the courts, then it is void, because it denies to the citizen due process of law, and destroys, if it does not take, his property, without due process of law, and denies to the citizen the right of trial by jury granted to him by the Federal Constitution.

The question as to whether the bridge is an unreasonable obstruction is one for the courts to determine on prosecution under the act and if the owner of the bridge can in court prove that it is not an unreasonable obstruction then the prosecution fails and the refusal of the court to receive the offer of the bridge owner to prove that the bridge was not an unreasonable obstruction to navigation and no change in it was necessary, is error.

Corporations are within Article III and the Amendments of the Constitution. *Armour Packing Co.* v. *United States*, 209 U. S. 56, 73, 89; *American Publishing Co.* v. *Fisher*, 166 U. S. 464.

*The Solicitor General* for the United States:

This case falls directly within *Union Bridge Company* v. *United States*, 204 U. S. 364.

When the Bridge Company was chartered and when its bridge was built, the Monongahela River was by statute a navigable highway (Pa. Act of April 17, 1782). The Bridge Company's charter contained the clause that "the erection of said bridge shall not obstruct the navigation of said river so as to endanger the passage of rafts, steam-boats or other water craft"; and this obligation assumed by the company is absolute, whether or not the river was actually navigable when the charter was granted or when the bridge was built. Similar clauses, both as to bridges and as to railroads crossing over the streets have invariably been interpreted as imposing a continuing duty of not interfering with the use of the rivers or streets at any time, however much that use may have grown in amount or kind from what it was when the bridge or railroad charter was granted.

The act of Congress of March 3, 1899, does not delegate legislative or judicial power to the Secretary of War or take private property without compensation. *Union Bridge Co.* v. *United States, supra,* pp. 377–387.

Plaintiff in error had a full and fair hearing by the Secretary of War, as required by statute. All proceedings, evidence and arguments at the public hearing were transmitted to him and his decision was given in view of all data presented by plaintiff in error. Plaintiff in error did not request that it be permitted to introduce further evidence or to offer further argument before the Secretary of War; and objection cannot now be made to the course of the proceedings before the Secretary of War, when no complaint concerning the character or extent of the proceedings was made to the Secretary of War himself.

Nor is it true that the Secretary of War determined his judgment as to the unreasonable obstructiveness of this bridge by the application of erroneous tests of law. Instead, the contrary must be presumed, for the record does not disclose what his processes of reasoning or grounds of decision were. He gave no opinion and made no findings, except his general conclusion that the bridge is an unreasonable obstruction of navigation.

The act of Congress makes the Secretary of War's decision conclusive that the bridge is an unreasonable obstruction, and plaintiff in error had no right to retry that question before the jury in this proceeding for violation of the Secretary's order.

MR. JUSTICE HARLAN delivered the opinion of the court.

This is a criminal information by the United States under § 18 of the River and Harbor Act of March 3d, 1899, against the President, Managers and Company of the Monongahela Bridge Company, a Pennsylvania corporation.

That section is as follows: "That whenever the Secretary of War shall have good reason to believe that any railroad or

other bridge now constructed, or which may hereafter be constructed, over any of the navigable waterways of the United States is an unreasonable obstruction to the free navigation of such waters on account of insufficient height, width of span, or otherwise, or where there is difficulty in passing the draw opening or the draw span of such bridge by rafts, steamboats, or other water craft, it shall be the duty of the said Secretary, first giving the parties reasonable opportunity to be heard, to give notice to the persons or corporations owning or controlling such bridge so to alter the same as to render navigation through or under it reasonably free, easy, and unobstructed; and in giving such notice he shall specify the changes recommended by the Chief of Engineers, that are required to be made, and shall prescribe, in each case, a reasonable time in which to make them. If at the end of such time the alteration has not been made, the Secretary of War shall forthwith notify the United States District Attorney for the district in which such bridge is situated, to the end that the criminal proceedings hereinafter mentioned may be taken. If the persons, corporation, or association owning or controlling any railroad or other bridge shall, after receiving notice to that effect, as hereinbefore required, from the Secretary of War, and within the time prescribed by him, wilfully fail or refuse to remove the same, or to comply with the lawful order of the Secretary of War in the premises, such persons, corporation, or association shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding five thousand dollars; and every month such persons, corporation, or association shall remain in default in respect to the removal or alteration of such bridge shall be deemed a new offense, and subject the persons, corporation, or association so offending to the penalties above prescribed: Provided, That in any case arising under the provisions of this section an appeal or writ of error may be taken from the district courts or from the existing circuit courts direct to the Supreme Court either by the United States or by the defendants." 30 Stat. 1121, 1153, c. 425.

The jury returned a verdict of guilty and a motion in arrest of judgment was made upon various grounds, the principal one being that the section of the above act of 1899 was unconstitutional, null and void. · That motion was denied, and a motion for new trial having been overruled, the defendant was adjudged to pay to the United States a fine of $1,000 and the costs of prosecution. From that judgment the case comes directly to this court under the authority of the proviso in the above act. Section 18.

It is essential to a clear understanding of the questions raised by the Bridge Company that we state certain facts disclosed by the record.

The Bridge Company was incorporated under an act passed by the General Assembly of Pennsylvania in 1830; and in 1833, by authority of that Commonwealth, it constructed the bridge in question over the Monongahela River. The structure is known as. the Brownsville Bridge between the towns of West Brownsville and Bridgeport. The charter of the company provided, among other things, that "the· erection of said bridge shall not obstruct the navigation of said river so as to endanger the passage of rafts, steamboats or other water craft." Penn. Laws, 1829–30, p. 105.

On the twenty-ninth of April, 1903, the Secretary of War, Mr. Root, was petitioned by numerous companies and individuals to have an investigation made of the bridge "as to its obstruction of navigation," and if it was found to be an obstruction of that character, "to have the means provided to compel it to be raised or equipped in such a way to relieve river people from the obstruction, making the height necessary to allow free navigation." The petition proceeded: "The coal in pools one, two, three and four below Brownsville has been practically exhausted and the Pittsburg district will, at no distant date, be forced to get its supply above Brownsville in the Fifth Pool. The petitioners recognize how impossible it will be to build or improve lock No. 3 unless the elevation of the Brownsville bridge be made at once." This petition was

referred by the Chief of Engineers to Major Sibert of the Corps
of. Engineers for investigation and report.  The latter officer
reported, among other facts, that  ".  .  .  4. The height
of this bridge is such that the average of the boats engaged in
interstate commerce between the States referred to above
[Pennsylvania and West Virginia] are prevented from passing
under the bridge at a stage of water materially less than that
which floods the walls of the locks of the Monongahela River.
5. A bridge that prevents the use of the locks owned by the
Government of the United States until the same are placed out
of service by means of high water is, in the opinion of this
office, an unreasonable obstruction to navigation.  .  .  .
7. This bridge is an old covered wooden bridge, constructed
some time between 1830 and 1840:  8. In the opinion of this
office this bridge is one that certainly requires action under sec-
tion 18, River and Harbor Act of March 3, 1899.  9. It is there-
fore respectfully recommended that it be proceeded against in
the manner specified under the law referred to above, both on
account of insufficient height and length of span, and that, in
the notice for a hearing in the case of this bridge the changes
proposed be such as to give a least clearance 52 feet under a ,
channel span of 400 feet wide; the length of side spans to be
determined from the developments at the hearing.  It is con-
sidered that one and one-half years is a reasonable time in
which to make the necessary changes in this bridge."  The
Chief of Engineers endorsed that report and recommended
that the papers be returned to Major Sibert, with instructions
to hold a public hearing, after due notice to interested parties,
as required by the law and the orders of the War Department.

Under date of May 23d, 1904, Major Sibert made a report to
the Chief of Engineers, from which it appears that the parties
interested were given a hearing, all parties being present.
That report stated: "3. These hearings, as this office under-
stands it, were held for the purpose of securing and forwarding
such information as would enable the Secretary of War to
decide whether or not there is good reason to believe that the

bridge in question is an unreasonable obstruction to navigation. 4. Stripped of all unnecessary verbiage the question for determination is: Is there good reason to believe that a bridge that prevents the better class of towboats actually navigating the Monongahela River, the commerce of which stream is about 10,000,000 tons annually, from passing under it for 17.7 days per year and prevents the packets actually navigating said stream from passing under it for 52.1 days per year, all as determined by the official records kept by the United States, an unreasonable obstruction to navigation? The above days are days that the boats in question cannot pass under the bridge but can pass through the locks that the Government of the United States has provided for their use. Would a railroad company consider that there was good reason to believe that its traffic was unreasonably obstructed by another highway if its passenger and express business were absolutely stopped for 52.1 days per year and its freight business so stopped for 17.7 days per year, when the same could be overcome at a reasonable cost to the obstructing highway, which latter highway was the last built? . . . This office is of the opinion that the following should constitute the grounds upon which a conclusion should be reached as to whether or not any particular bridge unreasonably obstructs navigation: 1st. Every bridge should be so constructed as to permit the passage under it or through it, with reasonable safety, of the average sized boat actually navigating the stream, at all practical stages of water. 2nd. Any bridge that does not permit the passage of such boat at such stages of water needlessly obstructs the use of the river highway and exists under conditions that are not reasonable, since it is impracticable to raise or lower a stream and it is always practicable to either build a bridge high enough and of sufficient width of span to allow the passage of such boats at such times as mentioned above or to place a draw in the bridge. 3rd. Where the topographical conditions are such that bridges can be made of such heights, without prohibitive cost, as to permit at all navigable stages of

water the passage of boats best suited to the river commerce, it is for the best interest of both the land traffic and the river traffic that bridges be so constructed. . . . . Based upon the foregoing, the essential features of which are the facts that towboat navigation with the better class of boats actually in use is prevented for 17.7 days of the year from passing under this bridge when the same could pass through the locks Congress has provided for such navigation, and that the packets actually navigating this stream are prevented from passing under this bridge at such time for 52.1 days in the year, and from the fact that Congress has specified in the two acts passed in the present year that a least clearance of 54 feet is needed for the navigation of this pool, whereas the bridge in question has only 40.2 feet, this office is of the opinion that there is good reason to believe that the bridge owned by the Monongahela Bridge Company, at Brownsville, Pa., is an unreasonable obstruction to navigation, and therefore respectfully recommends that The Monongahela Bridge Company, (George W. Lenhart, President, Brownsville, Pa.), be given notice to make the following changes in its bridge crossing the Monongahela River at Brownsville, Pa., on or before August 1, 1905, to wit: That the bridge be so altered as to give a channel span of not less than 390 feet in length between the face of the right abutment as now located and the center of the pier; and that the said channel span shall give a clearance height at the left, or pier, end, of not less than 52 feet, and at the right, or abutment, end of not less than 54 feet above the fourth pool of the Monongahela River. This will permit of the construction of the bridge in accordance with plan as shown in Sheet 3, Exhibit B, submitted by the Bridge Company."

The Chief of Engineers concurred in the views expressed and conclusions reached by Major Sibert, and recommended that notice be served accordingly.

Subsequently, August 10th, 1904, the Secretary of War, Mr. Taft, issued the following official notice, addressed to the Bridge Company:

"Whereas, the Secretary of War has good reason to believe that the bridge of the Monongahela Bridge Company across the Monongahela River, at Bridge Street in the Borough of Bridgeport, Pennsylvania, and commonly known as the Brownsville Bridge, is an unreasonable obstruction to the free navigation of the said Monongahela River (which is one of the navigable waterways of the United States) on account of insufficient height and length of span; And whereas, the following alterations, which have been recommended by the Chief of Engineers, are required to render navigation under it reasonably free, easy and unobstructed, to wit: So alter said bridge as to give a channel span of not less than 390 feet in length between the face of the right abutment as now located and the center of the pier; and that the said channel span shall give a clearance height of not less than 52 feet, above the Fourth Pool of the Monongahela River; and whereas, to August 1, 1905, is a reasonable time in which to alter the said bridge as described above: Now, therefore, in obedience to, and by virtue of, section eighteen of an act of Congress of the United States entitled 'An act making appropriations for the construction, repair, and preservation of certain public works on rivers and harbors, and for other purposes,' approved March 3, 1899, I, William H. Taft, Secretary of War, do hereby notify the said Monongahela Bridge Company to alter the said bridge as described above, and prescribe that said alterations shall be made and completed on or before August 1, 1905." This notice was duly served August 15th, 1904, on the Bridge Company, and the company failed to comply with the direction given by the Secretary of War.

Thereupon the present information was filed charging the Bridge Company with having willfully failed, refused and neglected to comply with the above order of the Secretary of War.

In view of this statement, an extended examination of the authorities would seem to be unnecessary; for, substantially

all the material questions raised on this writ of error are, we think, concluded by former decisions cited in the margin.[1]

This court has heretofore held upon full consideration and after an examination of the adjudged cases:

1. That § 18 of the River and Harbor Act of March 3, 1899, 30 Stat. 1151, could not reasonably be taken as a delegation of legislative and judicial power to an Executive Department of the Government; that the statute did not in any real, constitutional sense delegate to the Secretary of War any power that must, under our system of government, be exclusively exercised either by the legislative or judicial branch of the Government; that under its paramount power to regulate commerce on and over the navigable waters of the United States Congress could require that such waters be freed from unreasonable obstructions to navigation; that the statute in effect prescribed the general rule, applicable to all navigable waters, that free navigation should not be hampered by unreasonable obstructions arising from bridges of insufficient height, width of span or other defects; that instead of exerting its power by direct legislation in each case of a bridge alleged to constitute an unreasonable obstruction to navigation, Congress charged the Secretary of War with the duty of ascertaining, in each case, upon notice to the parties concerned, whether the particular

---

[1] *Union Bridge Co.* v. *United States*, 204 U. S. 364; *The Brig Aurora*, 7 Cranch, 382; *Wayman* v. *Southard*, 10 Wheat. 1; *Field* v. *Clark*, 143 U. S. 649; *C. W. &c. R. R.* v. *Com'rs*, 1 Ohio St. 77; *Moers* v. *City of Reading*, 21 Pa. St. 188; *Locke's Appeal*, 72 Pa. St. 491, 498; *Buttfield* v. *Stranahan*, 192 U. S. 470; *Gibbons* v. *Ogden*, 9 Wheat. 1; *Gibson* v. *United States*, 166 U. S. 269; *Scranton* v. *Wheeler*, 179 U. S. 141; *N. O. Gas Light Co.* v. *Drainage Com.*, 197 U. S. 453; *C., B. & Q. R. R. Co.* v. *Drainage Com'rs*, 200 U. S. 561; *West Chicago Street R. R. Co.* v. *Chicago*, 201 U. S. 506; *Dugan* v. *Bridge Co.*, 27 Pa. St. 303; *Cooke* v. *Boston & Lowell R. R.*, 133 Massachusetts, 185; *Lake Erie & Western R. R. Co.* v. *Cluggish*, 143 Indiana, 347; *Lake &c. Western R. R. Co.* v. *Smith*, 61 Fed. Rep. 885; *State of Indiana* v. *Lake Erie & Western R. R. Co.*, 83 Fed. Rep. 284, 287; *St. Louis & Iron Mountain R. R. Co.* v. *Taylor*, 210 U. S. 281; *Northern Pacific R. R. Co.* v. *Duluth*, 208 U. S. 583.

bridge came within the general rule prescribed; that any other method was impracticable in view of the vast and varied interests of the Nation requiring legislation from time to time; that the Secretary of War, proceeding under the act of 1899, could not be said to exercise strictly legislative or judicial power any more than when, upon investigation the Head of a Department ascertains, under the direction of Congress, whether a particular applicant for a pension belonged to a class of persons who, under a general rule prescribed by Congress, were entitled to pensions; and that a denial to Congress of authority, under the Constitution, to delegate to an Executive Department or officer the power to determine some fact or some state of things upon which the enforcement of its enactment may depend, would often render it impossible or impracticable to conduct the public business, and to successfully carry on the operations of the Government.

2. That the act of 1899 did not invest the Secretary of War with arbitrary power in the premises, since in reference to any bridge alleged to constitute an unreasonable obstruction to navigation he was bound, before making any decision or taking final action, to notify the parties interested of any proposed investigation by him, give them an opportunity to be heard, and allow reasonable time to make such alterations as he found to be necessary to free navigation.

3. That to require alterations or changes in a particular bridge, within a specified time, and after the parties have been heard, was not such a taking of private property for public use as must, under the Constitution, be preceded by the making of or sufficiently securing compensation to the owners of the bridge.

Although the Brownsville Bridge was originally constructed under the authority of the Commonwealth of Pennsylvania, and may not, at the date of its erection, have been an illegal structure or an unreasonable obstruction to navigation in the condition, at that time, of commerce and navigation on the Monongahela River, the bridge must be taken as having been

constructed with knowledge, on the part of all, of the paramount power of Congress to regulate commerce among the States, and subject to the condition or possibility that Congress might, at some time after its construction, and for the protection or benefit of the public, exert its constitutional power to protect free navigation as it then was against unreasonable obstructions; that the mere silence of Congress and its failure to directly interfere and prevent the original construction of the bridge, under the authority of Pennsylvania, imposed no constitutional obligation on the United States to make compensation for subsequent changes or alterations, which the public good, in its judgment, required to be made.

The adjudged cases fully sustain the judgment of the court below. We are asked to consider whether the opinion in *Union Bridge Co.* v. *United States*, 204 U. S. 364—the case upon which the Government mainly relies—should not be modified. We perceive no reason for so doing. We adhere to what was said in that case.

It is urgently insisted that the defendant did not have such a hearing as it was entitled to have under the law on the question whether the bridge was in fact an unreasonable obstruction to navigation. This is a mistake. The Bridge Company had full notice of the action of the Engineer officer, who, under the order of the Secretary of War, made a tentative examination of the facts, and it appeared at the regular, final hearing before that officer, with liberty to contest the facts and introduce any evidence pertinent to the case. It does not appear that it offered any evidence that was rejected. It was not subjected to any mode of procedure that interfered in any degree with a full and fair disclosure of the material facts. The Engineer officer, after the hearing before him— the Bridge Company being represented at the hearing—found that the bridge was an unreasonable obstruction to navigation. He reported to the Secretary of War all the facts that were adduced before him and which constituted the basis of his conclusion. And the decision of the Secretary was based on

the facts so reported to him. That it must be assumed on this record. It does not appear that the Secretary disregarded the facts, or that he acted in an arbitrary manner, or that he pursued any method not contemplated by Congress. It was not for the jury to weigh the evidence and determine, according to *their* judgment, as to what the necessities of navigation required, or whether the bridge was an unreasonable obstruction. The jury might have differed from the Secretary. That was immaterial; for Congress intended by its legislation to give the same force and effect to the decision of the Secretary of War that would have been accorded to direct action by it on the subject. It is for Congress, under the Constitution, to regulate the right of navigation by all appropriate means, to declare what is necessary to be done in order to free navigation from obstruction, and to prescribe the way in which the question of obstruction shall be determined. Its action in the premises cannot be revised or ignored by the courts or by juries, except that when it provides for an investigation of the facts, upon notice and after hearing, before final action is taken, the courts can see to it that Executive officers conform their action to the mode prescribed by Congress. Learned counsel for the defendant suggests some extreme cases, showing how reckless and arbitrary might be the action of Executive officers proceeding under an act of Congress, the enforcement of which affects the enjoyment or value of private property. It will be time enough to deal with such cases as and when they arise. Suffice it to say, that the courts have rarely, if ever, felt themselves so restrained by technical rules that they could not find some remedy, consistent with the law, for acts, whether done by government or by individual persons, that violated natural justice or were hostile to the fundamental principles devised for the protection of the essential rights of property.

We find no error of law in the record, and the judgment must be affirmed. *It is so ordered.*

MR. JUSTICE BREWER dissents.