## UNITED STATES v. GRIFFIN et al.

District Court, W. D. Virginia.
May 18, 1932.

R. O. Crockett, Sp. Asst. Atty. Gen.

Barksdale & Abbot, of Lynchburg, Va., for defendant Griffin.

McDOWELL, District Judge.

This condemnation suit, instituted in this court by the government to condemn a part of the land claimed by Malcolm Griffin, has raised a number of interesting questions. The opinion, in United States v. Griffin (D. C.) 14 F.(2d) 326, does not relate to the matter herein discussed.

The defendant Griffin has objected to confirmation of the report of the condemnation commissioners, inter alia, on the ground that the Weeks Act (36 Stats. 961 [16 USCA §§ 480, 500, 513–519, 521, 552, 563]) is unconstitutional. The theory of counsel is that the Federal Constitution contains no grant to the government of power to condemn land for the national forests. As this contention has been set up more than once, I shall herein state the reason for my belief that this contention is unsound.

The land sought to be condemned lies on both sides of and near the head of an unnavigable tributary of the James river. The court does and should take judicial notice of the notorious fact that from Richmond to the Atlantic the James river is navigable, and that it is much used in both interstate and foreign commerce.

The Weeks Act is the Act of March 1, 1911, c. 186, 36 Stats. 961, 16 USCA §§ 480, 500, 513–519, 521, 552, 563. So far as I know, none of the amendments of that act are here of importance. The chief purpose of the statute, as is stated in its title is "for the protection of the watersheds of navigable streams, and to appoint a commission for the acquisition of lands for the purpose of conserving the navigability of navigable rivers." See, also, sections 2, 3, and 6.

This statute has been in force for more than twenty years. Judging by the number of condemnation suits in this one district, many hundreds of such suits must have been instituted by the government to acquire title to lands for the different national forests; and yet, so far as I know, no reported case indicates that any one has ever before questioned the validity of the statute.

It is a matter of common knowledge that a heavy growth of trees on mountains and hills greatly lessens soil erosion, and hence greatly reduces the quantity of soil carried by flood waters. It follows that re-forestation and the protection of the forest growth on the watersheds of the headwaters of a navigable river has a direct and valuable effect in reducing the amount of sediment carried by floods to the lower reaches of such rivers. That the creation and administration of the national forests as intended by the Weeks Act, is an appropriate means to increase and conserve the navigability of certain rivers, and thus to foster and aid water-borne interstate commerce seems to me plain enough to require no further discussion.

Article 1, section 8, cl. 3, of the Constitution, gives Congress the power to regulate interstate and foreign commerce, and clause 18 gives it the power to make all laws "necessary and proper" for carrying into execution the above power. In Legal Tender Case, 110 U. S. 421, 440, 4 S. Ct. 122, 125, 28 L. Ed. 204, it was said of clause 18: "By the settled construction and the only reasonable interpretation of this clause the words 'necessary and proper' are not limited to such measures as are absolutely and indispensably necessary, without which the powers granted must fail of execution, but they include all appropriate means which are conducive or adapted to the end to be accomplished, and which, in the judgment of congress, will most advantageously effect it." See, also, McCulloch v. Maryland, 4 Wheat. 316, 421, 4 L. Ed. 579; Logan v. U. S., 144 U. S. 263, 283, 12 S. Ct. 617, 36 L. Ed. 429.

In Second Employers' Liability Case, 223 U. S. 1, 47, 32 S. Ct. 169, 174, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44, in reference to the power to regulate commerce, the court said: "'To regulate,' in the sense intended, is to foster, protect, control, and restrain, with appropriate regard for the welfare of those who are immediately concerned and of the public at large."

In Willamette Iron Bridge Co. v. Hatch, 125 U. S. 1, 8, 8 S. Ct. 811, 815, 31 L. Ed. 629, it was said: "The power of Congress to pass laws for the regulation of the navigation of public rivers, and to prevent any and all obstructions therein, is not questioned."

The shoaling of a navigable river by flood-borne sediment or by scant supply of water due to unrestrained escape of the rainfalls is an obstruction of navigation frequently as effective as an unduly low or narrow bridge. And I cannot satisfactorily discriminate between the power of Congress to foster and protect the navigability of a river by providing for reforestation of the watersheds of the headwaters, and requiring the removal of ob-

jectionable bridges over the navigable portions of the river. See Union Bridge Co. v. U. S., 204 U. S. 364, 27 S. Ct. 367, 51 L. Ed. 523, in which the first headnote reads: "Commerce comprehends navigation; and to free navigation from unreasonable obstructions by compelling the removal of bridges which are such obstructions is a legitimate exercise by Congress of its power to regulate commerce." See, also, to the same effect, Monongahela Bridge v. U. S., 216 U. S. 177, 30 S. Ct. 356, 54 L. Ed. 435.

It seems to me that the conclusion that the Weeks Act is constitutional is unavoidable.