T. M. Duche & Sons, Inc. v. United States (No. 4576)[1]

[1] C. A. D. 391.

United States Court of Customs and Patent Appeals, November 2, 1948

*Barnes, Richardson & Colburn* (*A. MacC. Barnes* and *J. Bradley Colburn* of counsel) for appellant.

*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

[Oral argument October 7, 1948, by Mr. Barnes and Mr. Donohue]

Before GARRETT, Chief Judge, and Hatfield, Jackson, O'Connell, and Johnson, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division (one judge dissenting), in conformity with its decision, C. D. 1040, overruling a protest of appellant against the assessment of duty at the rate of 27 cents per pound on an importation of dried egg albumen under the provisions of paragraph 713 of the Tariff Act of 1930 as amended by a proclamation of the President, T. D. 44997, made pursuant to section 336 of said act.

Appellant claimed the imported merchandise to be properly dutiable at 18 cents per pound which is the rate for dried egg albumen as provided in the tariff act, contending that the proclamation was illegal for the alleged reason that it was made pursuant to an unlawful investigation by the Tariff Commission.

The pertinent parts of section 336 read as follows:

### SEC. 336. EQUALIZATION OF COSTS OF PRODUCTION.

(a) CHANGE OF CLASSIFICATION OR DUTIES.—In order to put into force and effect the policy of Congress by this Act intended, the commission (1) upon request of the President, or (2) upon resolution of either or both Houses of Congress, or (3) upon its own motion, or (4) when in the judgment of the commission there is good and sufficient reason therefor, upon application of any interested party, shall investigate the differences in the costs of production of any domestic article and of any like or similar foreign article. In the course of the investigation the commission shall hold hearings and give reasonable public notice thereof, and shall afford reasonable opportunity for parties interested to be present, to produce evidence, and to be heard at such hearings. The commission is authorized to adopt such reasonable procedure and rules and regulations as it deems necessary to execute its functions under this section. The commission shall report to the President the results of the investigation and its findings with respect to such differences in costs of production. If the commission finds it shown by the investigation that the duties expressly fixed by statute do not equalize the differences in the costs of production of the domestic article and the like or similar

foreign article when produced in the principal competing country, the commission shall specify in its report such increases or decreases in rates of duty expressly fixed by statute (including any necessary change in classification) as it finds shown by the investigation to be necessary to equalize such differences. In no case shall the total increase or decrease of such rates of duty exceed 50 per centum of the rates expressly fixed by statute.

(b) CHANGE TO AMERICAN SELLING PRICE.—If the Commission finds upon any such investigation that such differences can not be equalized by proceeding as hereinbefore provided, it shall so state in its report to the President and shall specify therein such ad valorem rates of duty based upon the American selling price (as defined in section 402 (g)) of the domestic article, as it finds shown by the investigation to be necessary to equalize such differences. In no case shall the total decrease of such rates of duty exceed 50 per centum of the rates expressly fixed by statute, and no such rate shall be increased.

(c) PROCLAMATION BY THE PRESIDENT.—The President shall by proclamation approve the rates of duty and changes in classification and in basis of value specified in any report of the commission under this section, if in his judgment such rates of duty and changes are shown by such investigation of the commission to be necessary to equalize such differences in costs of production.

(e) ASCERTAINMENT OF DIFFERENCES IN COSTS OF PRODUCTION.—In ascertaining under this section the differences in costs of production, the commission shall take into consideration, in so far as it finds it practicable:

(1) IN THE CASE OF A DOMESTIC ARTICLE.—(A) The cost of production as hereinafter in this section defined; (B) transportation costs and other costs incident to delivery to the principal market or markets of the United States for the article; and (C) other relevant factors that constitute an advantage or disadvantage in competition.

(2) IN THE CASE OF A FOREIGN ARTICLE.—(A) The cost of production as hereinafter in this section defined, or, if the commission finds that such cost is not readily ascertainable, the commission may accept as evidence thereof, or as supplemental thereto, the weighted average of the invoice prices or values for a representative period and/or the average ·wholesale selling price for a representative period (which price shall be that at which the article is freely offered for sale to all purchasers in the principal market or markets of the principal competing country or countries in the ordinary course of trade and in the usual wholesale quantities in such market or markets); (B) transportation costs and other costs incident to delivery to the principal market or markets of the United States for the article; (C) other relevant factors that constitute an advantage or disadvantage in competition, including advantages granted to the foreign producers by a government, person, partnership, corporation, or association in a foreign country.

(h) DEFINITIONS.—For the purpose of this section—

(1) The term "domestic article" means an article wholly or in part the growth or product of the United States; and the term "foreign article" means an article wholly or in part the growth or product of a foreign country.

(2) The term "United States" includes the several States and Territories and the District of Columbia.

(3) The term "foreign country" means any empire, country, dominion, colony, or protectorate, or any subdivision or subdivisions thereof (other than the United States and its possessions).

(4) The term "cost of production", when applied with respect to either, a domestic article or a foreign article, includes, for a period which is representative of conditions in production of the article: (A) The price or cost of materials, labor costs, and other direct charges incurred in the production of the article and in the

processes or methods employed in its production; (B) the usual general expenses, including charges for depreciation or depletion which are representative of the equipment and property employed in the production of the article and charges for rent or interest which are representative of the cost of obtaining capital or instruments of production; and (C) the cost of containers and coverings of whatever nature, and other costs, charges, and expenses incident to placing the article in condition packed ready for delivery.

(i) RULES AND REGULATIONS OF PRESIDENT.—The President is authorized to make all needful rules and regulations for carrying out his functions under the provisions of this section.

It appears that the Tariff Commission in compliance with Senate Resolution 389, dated January 21, 1931, instituted an investigation on January 23, 1931 of the differences in costs of production of dried whole eggs, dried egg yolk, and dried egg albumen in the United States and in the principal competing countries. Public notice of the hearing was given on March 11, 1931; the hearing was held in Washington, D. C. on April 16, 1931; and interested parties were given reasonable opportunity to be present, to produce evidence, and to be heard as required by law.

On June 16, 1931 the Tariff Commission transmitted to the President its report together with a summary of information obtained in the investigation, and on June 24, 1931 the said proclamation by the President issued. It reads as follows:

PRESIDENTIAL PROCLAMATION
. (T. D. 44997)

WHEREAS under and by virtue of section 336 of Title III, Part II, of the act of Congress approved June 17, 1930 (46 Stat. 701), entitled "An act to provide revenue, to regulate commerce with foreign countries, to encourage the industries of the United States, to protect American labor, and for other purposes," The United States Tariff Commission has investigated the differences in costs of production of, and all other facts and conditions enumerated in said section with respect to, dried whole eggs, dried egg yolk, and dried egg albumen, whether or not sugar or other material is added, being wholly or in part the growth or product of the United States and of and with respect to like or similar articles wholly or in part the growth or product of the principal competing country;

WHEREAS in the course of said investigation a hearing was held, of which reasonable public notice was given and at which parties interested were given reasonable opportunity to be present, to produce evidence, and to be heard;

WHEREAS the commission has reported to the President the results of said investigation and its findings with respect to such differences in costs of production;

WHEREAS the commission has found it shown by said investigation that the principal competing country is China, and that the duties expressly fixed by statute do not equalize the differences in the costs of production of the domestic articles and the like or similar foreign articles when produced in said principal competing country, and has specified in its report the increase in the rate of duty expressly fixed by statute found by the commission to be shown by said investigation to be necessary to equalize such differences; and

WHEREAS in the judgment of the President such rate of duty is shown by such investigation of the Tariff Commission to be necessary to equalize such differences in costs of production,

Now, THEREFORE, I, HERBERT HOOVER, President of the United States of America, do hereby approve and proclaim an increase in the rate of duty expressly fixed in paragraph 713 of Title I of said act on dried whole eggs, dried egg yolk, and dried egg albumen, whether or not sugar or other material is added, from 18 cents per pound to 27 cents per pound, the rate found to be shown by said investigation to be necessary (within the limit of total increase provided for in said act) to equalize such differences in costs of production.

IN WITNESS WHEREOF, I have hereunto set my hand and caused the seal of the United States to be affixed.

DONE at the City of Washington this 24th day of June, in the year of our Lord nineteen hundred and thirty-one, and of the Independence of the United States of America the one hundred and fifty-fifth.

HERBERT HOOVER.

The record herein consists merely of the record in the case of *T. M. Duche & Sons, Inc.* v. *United States*, 13 Cust. Ct. 26, C. D. 863, which in turn included the record in the case of *David L. Moss Co., Inc.* v. *United States*, 26 C. C. P. A. (Customs) 381, C. A. D. 45. In the incorporated *Duche* case, *supra*, the involved protests were overruled by an unanimous court under the authority of the case of *United States* v. *George S. Bush & Co., Inc.*, 310 U. S. 371, T. D. 50159. In the present case a majority of the same division were of opinion that the decision in the incorporated *Duche* case, *supra*, should stand as the law and entered judgment accordingly.

Appellant contends in its brief that the report of the Tariff Commission shows on its face that there had been no legal compliance with the jurisdictional requirements of section 336, and that, therefore, the proclamation of the President, being based on such report is illegal and void. It supports that contention by asserting that there was no domestic article in existence like or similar to the foreign article, the rate of duty upon which was increased by the proclamation; that there was no commercial production from which costs of production, as defined by section 336, could be ascertained; that domestic costs of production, as defined in the involved section, were not obtained; that the domestic costs of production found were estimated and not actual; that the commission used an alternative method for domestic costs whereas section 336 provided for one method only; and that the action of the President was illegal and void because he assumed a non-delegated power to protect by tariff rates a non-existent domestic article and industry.

It is the position of appellee that the report of the Tariff Commission to the President shows on its face that the investigation was conducted in complete accord with the provisions of section 336, and that on the basis of such investigation the report of the commission was submitted, recommending that the existing rate of duty be increased 50 per

centum, and that in the judgment of the President such rate of duty was shown by the investigation of the Tariff Commission to be necessary to equalize the differences in costs of production of dried egg albumen as well as dried whole eggs and dried egg yolk.

It is argued by counsel for appellee that the Presidential proclamation and the report of the Tariff Commission may be judicially reviewed in order to ascertain whether or not those documents disclose that the investigation was conducted and the proclamation issued in accordance with law. Counsel for the Government contend that the evidence considered by the Commission and its sufficiency to support the report to the President and the judgment of the President in accepting the report are not matters for judicial inquiry.

If we are to consider only the statement of counsel for appellant that the proclamation is null and void for the reason that the report of the commission shows on its face that there had been no legal compliance with the necessary jurisdictional requirements, the only question before us would be whether or not the report and proclamation show that the prescribed legislative forms proper to the conduct of the investigation were duly observed.

There is no difference of opinion between the parties in any respect except as to whether or not the Tariff Commission and the President functioned within the limitations prescribed by statute.

It is not denied by appellant that during the representative period taken by the commission, within which to determine costs of production, that there was such an article as dried egg albumen produced in the United States. Its contention is that such domestic article was not shown to be in commercial production and that it is necessary under section 336 to find that an industry exists wherein such domestic article is commercially produced.

There is nothing in the report of the commission specifically stating that there was no domestic commercial production, but it is stated therein that "actual costs of drying obtained from establishments which have been engaged in that business have been used by the commission."

We are of opinion that a fair reading of section 336 does not necessarily presuppose the existence of a competitive domestic industry in order to lend validity to an investigation by the Tariff Commission.

We agree with the trial court in its reasoning as follows:

While the statute, section 336, refers to the cost of production "of any domestic article," plaintiff argues that there is a necessity for the existence of a domestic *industry* notwithstanding the fact that section 336 (h) (1) states that "the term 'domestic article' means an article wholly or in part the growth or product of the United States * * *." Inasmuch as Congress has expressly defined "domestic article" in precise terms, it is not apparent why the court should seek to enlarge the section by insisting that there must be a domestic industry as urged by the plaintiff. The fact that at the time of the investigation in question there

may have been a great disparity in the degree of production of the foreign and domestic articles, respectively, is a matter of no concern to the court.

Therefore, we can not agree with appellant's contention with respect to the existence of a competitive domestic industry as being necessary in order to give vitality to the report of the commission and the proclamation of the President.

In spite of appellant's contention, as stated in its brief, that it "is not asking a review of the factual findings and conclusions of the Commission," it apparently does not intend to bind itself to such contention because further on in the brief it is stated that "certainly the express language of section 514 and the history of the flexible tariff provisions and decisions thereunder establish that this court possesses the power to *judicially examine the factual record* upon which the President's action is based to determine whether there has been compliance with the jurisdictional and statutory requirements which limit their exercise of delegated power." [Italics ours.] As we understand it, such examination indicates that appellant contends that the court may review the facts which appear in the record of the hearing. We are of opinion that this may not properly be done.

It is true that, in the *Moss* case, *supra*, Presiding Judge Garrett and Judges Bland, Lenroot and Parker were of opinion that the court possessed the power contended for by appellant. We do not consider such holding to be sound, particularly in view of the observations made in the *Bush* case, *supra*, which parallel the reasoning expressed in the opinion of Hatfield, Judge, specially concurring in the *Moss* case, *supra*. The *Moss* case was decided by this court May 27, 1939, and the *Bush* case was decided by the Supreme Court May 20, 1940.

Section 336 was enacted pursuant to a legislative policy "relating to an exclusively legislative function." That policy, as conditions required, was to increase or decrease, within prescribed limitations, rates of duty upon importations into the United States. Section 336 does not provide expressly nor by necessary implication that all of the evidence before the commission and the President shall be submitted at the hearing. The hearing is merely a part of the investigation. Furthermore, under provisions of section 335, no evidence of a confidential nature can be disclosed in the report of the commission. That evidence in any investigation of the Tariff Commission may be great or may be little, and, as was said by Judge Hatfield, the findings of the commission and the proclamation of the President may be based upon such evidence. The hearings are clearly not judicial in character and they may be either private or public. *Norwegian Nitrogen Products Co.* v. *United States*, 288 U. S. 294, 317.

No legal rights were affected by either the findings of the commission or by the proclamation of the President for the reason that "No one has a legal right to the maintenance of an existing rate or

duty." *Norwegian Nitrogen Products Co.* v. *United States, supra.* While the decision in that case involved the provisions of section 315 of the Tariff Act of 1922, by which the President was not limited to a consideration of the evidence obtained by the commission, we think that what was said there that "Neither the action of Congress in fixing a new tariff nor that of the President in exercising his delegated power is *subject to impeachment if the prescribed forms of legislation have been regularly observed.*", applies to the present controversy. (Italics ours.)

We do not deem it necessary to discuss again the different lines of decision set out in the opinion of Judge Hatfield. But we recommend a reading of that decision for a clear exposition and understanding of those cases and their relationship to the present case.

Counsel for appellant vigorously contend that the decision in the case of *United States* v. *George S. Bush & Co., Inc., supra,* relied upon by the trial court, has no application to the present case. In that case the Supreme Court reviewed our holding (by a divided court) that the proclamation, issued under section 336 of the Tariff Act of 1930, was invalid for the reason that the report of the Tariff Commission was jurisdictionally defective. The proclamation increased the duty on canned clams. In making its findings, the commission took the weighted average of the invoice prices for a representative period, December 1, 1930 to September 30, 1932, expressed in Japanese yen. In converting the yen into U. S. dollars, the commission employed the average rate of exchange of the Japanese yen for the year of 1932. It was held by the majority of this court that such conversion was error in that invoice prices for one period were taken and dollar values of the yen at the average rate of exchange for another period were used in converting the yen into dollars. That holding was reversed by the Supreme Court and the validity of the proclamation was sustained. The issue there was whether or not the proclamation was invalid for the reason that in the report of the commission the conversion from yen to dollars was made as aforesaid.

It is not contended in the brief of appellant that any expression or reasoning appearing in the opinion of the Supreme Court in respect of the power of the commission and the President under the provisions of section 336 is *obiter dicta.* It does contend that that decision is not opposed to the reasoning of the majority of this court in the *Moss* case, *supra.* We can not agree with that viewpoint.

The Supreme Court in the *Bush* case, *supra,* pointed out there was no express provision in the act for the rate of exchange to be taken for the same period as that of the invoice prices. It held that if such provision were implied it would result in adding to the statute what Congress had purposely omitted in view of the nature of the problem, and that, therefore, the matter was "left at large." The Court then

stated that the scope of appellate jurisdiction contained in section 501 of the act does not permit judicial examination of the judgment of the President as shown in his proclamation. We see no reason under the provisions of paragraph 514 why there should be a different rule as is contended by appellant. While such alleged distinction was not presented by the parties in the *Bush* case, *supra*, it was disposed of and commented on in the concurring opinion of Judge Hatfield in the *Moss* case, *supra*. He stated as follows:

The claimed authority for the protest in the instant case is section 514 of the Tariff Act of 1930. Under that section protests may be filed against "all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury)," etc.

As any interested party has a legal right to a hearing before the Tariff Commission and to constructive notice, at least, of the time and purpose of such hearing, we held in several decisions, some of which are cited in Judge Parker's opinion, that, a proper appeal having been taken, the quoted provisions of section 514, *supra*, and similar provisions in section 514 of the Tariff Act of 1922 were the source of this court's power to require the Tariff Commission and the President to "conform their action to the mode prescribed by Congress." See *Monongahela Bridge* v. *United States*, 216 U. S. 177, 195. If, however, in making findings of fact and issuing proclamations under the provisions of section 336, *supra*, the President acts as a mere agent of the Congress in effectuating a legislative policy relating to an exclusively legislative function, as held in the case of *Hampton & Co.* v. *United States*, 276 U. S. 394, the Congress certainly did not have in mind in enacting the provisions of section 514, *supra*, that a protest against the decision of the collector should confer jurisdiction upon the Customs Court and, on appeal, this court to review the evidence before the President for the purpose of determining whether there was any substantial evidence to warrant the raising or lowering of rates of duty. *United States* v. *Klingenberg*, 153 U. S. 93; *Monongahela Bridge* v. *United States, supra*.

That reasoning of Judge Hatfield in our opinion has been reiterated and somewhat expanded by Mr. Justice Douglas in the *Bush* case, *supra*, where he observed as follows:

The powers which Congress has entrusted to the President under the Act of 1930 do not essentially differ in kind from those which have been granted him under the tariff acts for well over a century. See *Norwegian Nitrogen Products Co.* v. *United States*, 288 U. S. 294, 308 et seq., for a review of the statutes. Since its creation in 1916 the Commission has acted as an adviser to the Congress or to the President. Under §336 of the Act of 1930 the Commission serves the President in that role. It does not increase or decrease the rates of duty; it is but the expert body which investigates and submits the facts and its recommendations to the President. It is the judgment of the President on those facts which is determinative of whether or not the recommended rates will be promulgated. In substance and to a great extent in form (*Norwegian Nitrogen Products Co.* v. *United States, supra*) the action of the Commission and the President is but one stage of the legislative process. *Hampton & Co.* v. *United States*, 276 U. S. 394. "No one has a legal right to the maintenance of an existing rate or duty." *Norwegian Nitrogen Products Co.* v. *United States, supra*, p. 318. And the judgment of the President that on the facts, adduced in pursuance of the procedure pre-

scribed by Congress, a change of rate is necessary is no more subject to judicial review under this statutory scheme than if Congress itself had exercised that judgment. It has long been held that where Congress has authorized a public officer to take some specified legislative action when in his judgment that action is necessary or appropriate to carry out the policy of Congress, the judgment of the officer as to the existence of the facts calling for that action is not subject to review. *Martin* v. *Mott,* 12 Wheat. 19; *Monongahela Bridge Co.* v. *United States,* 216 U. S. 177; *Dakota Central Telephone Co.* v. *South Dakota,* 250 U. S. 163; *United States* v. *Chemical Foundation, Inc.,* 272 U. S. 1. As stated by Mr. Justice Story in *Martin* v. *Mott, supra,* pp. 31–32: "Whenever a statute gives a discretionary power to any person, to be exercised by him upon his own opinion of certain facts, it is a sound rule of construction, that the statute constitutes him the sole and exclusive judge of the existence of those facts."

For the judiciary to probe the reasoning which underlies this Proclamation would amount to a clear invasion of the legislative and executive domains. Under the Constitution it is exclusively for Congress, or those to whom it delegates authority, to determine what tariffs shall be imposed.

In our opinion, the aforesaid views of the Supreme Court in the *Bush* case, *supra,* are clearly at variance with the views expressed by Presiding Judge Garrett and Judges Bland, Lenroot and Parker in the *Moss* case, *supra,* and should be adopted by us herein.

For the reasons hereinbefore stated, the judgment of the United States Customs Court is *affirmed.*

GARRETT, Chief Judge, *dissenting.*

The majority here feel constrained to overrule the conclusion of law announced by a majority of the court in the case of *David L. Moss Co., Inc.* v. *United States,* decided March 27, 1939, 26 C. C. P. A. (Customs) 381, C. A. D. 45.

As epitomized in a portion of the second head note of that case, it was there said:

\* \* \* A majority of the court concurs in the view that, while it is not a function of the court to weigh the evidence and determine the facts, it may go behind the report of the [tariff] commission, which is before the court, to determine whether the finding of the President and the commission that dried egg albumen was such a domestic article is supported by any substantial evidence. Citing *Shields* v. *Utah Idaho Cent. R. R. Co.,* 305 U. S. 177.

No appeal was taken from this court's decision in that case, and the question of law there decided has never been before the Supreme Court of the United States. However, as I understand the majority opinion in the instant case, it is the majority view that the reasoning of the Supreme Court in the case of the *United States* v. *George S. Bush Co., Inc.,* decided May 20, 1940, 310 U. S. 371, T. D. 50159, is at variance with the holding of the majority of this court in the *Moss* case, *supra,* and for that reason the *Bush* case is thought to support the present majority position.

I find myself unable to concur in that view and hence respectfully dissent.

I deem it unnecessary to discuss the facts of the instant case. Concededly, they do not differ materially from the facts found in the *Moss* case, *supra*.