## HANNIBAL BRIDGE COMPANY *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR
THE EASTERN DISTRICT OF MISSOURI.

No. 100. Argued April 17, 1911.—Decided May 15, 1911.

Section 18 of the act of March 3, 1899, c. 425, 30 Stat. 1153, authoriz-
ing the Secretary of War to require the removal of bridges which are
obstructions to navigation over navigable waterways of the United
States, is within the constitutional powers of Congress, and was
enacted to carry out the declared policy of the Government as to
the free and unobstructed navigation of waters of the United States
over which Congress has paramount control in virtue of its power to
regulate commerce.

As the statute only imposes on the Secretary of War the duty of attend-
ing to details necessary to carry out such declared policy it is not
an unconstitutional delegation of legislative or judicial power to an
executive officer.

Requiring the alteration of a bridge which is an obstruction to naviga-
tion is not a taking of property of the owners of such bridge within
the meaning of the Constitution.

Notice was duly served on all parties in interest and the hearings given
on the report of the Chief of Engineers by the Secretary of War were
in accord with the statute and the owners of the bridge, the removal
whereof was ordered, cannot complain.

The head of an executive department of this Government cannot him-
self sign every official communication emanating from his depart-
ment, and a proper notice signed by the Assistant Secretary has the
same force as though signed by the Secretary.

The notice of alterations required was sufficient in this case as it left
no reasonable doubt as to what was to be done.

The fact that a bridge was erected over a navigable water of the
United States under authority of the act of July 25, 1866, c. 246,
14 Stat. 244, does not prevent Congress from ordering its removal
when it becomes an obstruction, as the act expressly reserves the
right to alter or amend it so as to prevent obstructions to naviga-
tion. *Union Bridge Co. v. United States*, 204 U. S. 364.

THE facts, which involve the construction of the provisions of the act of March 3, 1899, relating to the removal of obstructions from navigable waters of the United States, and the validity of proceedings taken, and orders made, thereunder in connection with plaintiff in error's bridge over the Mississippi River at Hannibal, Missouri, are stated in the opinion.

Mr. R. Burnham Moffat, for plaintiff in error, Hannibal Bridge Company; *Mr. Wells H. Blodgett,* with whom *Mr. James L. Minnis,* and *Mr. George A. Mahan* were on the brief, for plaintiff in error, Wabash Railroad Company:

The special act of July 25, 1866, under which the bridge was erected, and which reserved to Congress the power to require changes in the structure, was not repealed, or in any wise affected, by the subsequent general law of March 3, 1899, under which this proceeding was instituted. *State v. Stoll,* 17 Wall. 436; *Rogers v. United States,* 185 U. S. 87; Sedgwick on Stat. Const. 123; Bishop, Written Law, § 112-B; *Commissioners v. Board of Public Works,* 39 Oh. St. 628; *Fosdic v. Perrysburg,* 14 Oh. St. 472.

The bridge having been erected in accordance with the act of 1866, it became a lawful structure, and necessarily continues so until that act shall be amended. What Congress has made lawful, only Congress can make unlawful. *United States v. Keokuk Bridge Co.,* 45 Fed. Rep. 178.

The alterations to be made in the bridge were not described, in the notice, with such certainty as to enable the defendants to know when they had complied therewith.

As the only offense charged in the information consisted of a failure, on the part of defendants, to do the things required to be done by the notice, it follows that the things required to be done should have been described

in the notice with the same degree of certainty that is required in describing the things that may be done, or may not be done, in a penal statute. *United States* v. *Keokuk Bridge Co.*, 45 Fed. Rep. 178; *Chicago & N. W. Ry. Co.* v. *Dey*, 35 Fed. Rep. 876; *United States* v. *Cruikshank*, 92 U. S. 557; *McConville* v. *Myer*, 39 N. J. Law, 38; *Louisville & Nashville Ry. Co.* v. *Commissioners*, 19 Fed. Rep. 679.

A contract for work, of such vague description, could not be specifically enforced. If this were a suit on a contract to build a long pier, a proper guard fence, or a good house, there could be no decree for specific performance, because of insufficient description of the work to be performed. Bishop on Contracts, § 316; Beach on Contracts, § 76.

Defendants should have been discharged, because it was no offense under § 18 of the act of 1899, to refuse to comply with the notice signed by the Assistant Secretary of War. That office is not mentioned in § 18, and criminal statutes cannot be enlarged by construction, nor can new, or additional words, be read into them. There is nothing in the act creating the office that advised defendants that they were required to obey a notice signed by that officer. 26 Stat. 17; *United States* v. *Wiltberger*, 5 Wheat. 76; *United States* v. *Harris*, 177 U. S. 305; *In re Enterprise*, 1 Paine, 32.

The parties owning and operating the bridge were not given a reasonable opportunity to be heard, in the sense in which those words are employed in the act of 1899.

The words "hearing" and "reasonable opportunity to be heard," are not new in legislative enactments. They signify the right to be present, to be represented by counsel, to have the witnesses testify under sanction of an oath, and the right of cross-examination. These rights were not accorded to defendants. *Keach* v. *Thompson*, 94 N. Y. 451; *Mayor* v. *Nichols*, 79 N. Y. 582.

There was a fatal variance between material allegations of the information, and the proof; the allegation being that the Secretary of War gave the notice, and the proof being that the Assistant Secretary of War gave the notice. *United States* v. *Cantril*, 4 Cranch, 167; *United States* v. *Hardyman*, 13 Pet. 176.

There was absolutely no proof offered, either at the so-called "hearing" before the Secretary or at the trial of the defendants in the District Court, to support the charge in the information to the effect that the bridge was not erected in accordance with the act of July 25, 1866.

Congress has not, by the act of 1866, surrendered its right to determine, for the purposes of the contract, the fact upon which alone it may require alterations; plaintiffs in error are entitled to an ascertainment of the fact by Congress, and not by an officer of one of the executive departments of the Government. *United States* v. *Central Pacific R. R. Co.*, 118 U. S. 235; *Walker* v. *Whitehead*, 16 Wall. 314; *People ex rel.* v. *Otis*, 90 N. Y. 48; *State* v. *Julow*, 129 Missouri, 172.

*Mr. Assistant Attorney General Harr* for the United States:

The power conferred upon the Secretary of War by § 18 of the act of March 3, 1899, 30 Stat. 1121, 1153, may be exercised with respect to the Hannibal bridge, although constructed pursuant to the act of July 25, 1866, 14 Stat. 244.

The rule *generalia specialibus non derogant* has no application. 25 Op. A. G. 212; *United States* v. *Keokuk Bridge Co.*, 45 Fed. Rep. 178, upon which plaintiffs in error rely; *Union Bridge Co.* v. *United States*, 204 U. S. 364; *Monongahela Bridge Co.* v. *United States*, 216 U. S. 177, 194.

Even if § 18 of the act of 1899, does not apply to a bridge constructed pursuant to the act of July 25, 1866, the action of the Secretary of War and the proceedings

in this case are none the less authorized and valid as the Hannibal bridge was constructed in accordance with the act of July 25, 1866. *Hannibal Railroad Co.* v. *Packet Co.*, 125 U. S. 260, 269.

The alterations specified in the notice served upon plaintiffs in error were set forth with sufficient particularity.

The notice to alter, signed by the Assistant Secretary of War, met the requirements of § 18. On its face, and in legal effect, the notice is given by the Secretary of War, the Assistant Secretary, who signed it, being merely the medium for its transmittal. *Miller* v. *Mayor*, 109 U. S. 385; *Wilcox* v. *Jackson*, 13 Pet. 498; *Wolsey* v. *Chapman*, 101 U. S. 755, 769.

In the absence of any proof to the contrary, it must be assumed that the statements contained in the notice were true and that the Assistant Secretary was authorized by the Secretary to send the same. *United States* v. *Peralta*, 19 How. 343, 347; *Parish* v. *United States*, 100 U. S. 500; *United States* v. *Adams*, 24 Fed. Rep. 348, 351; *John Shillito Co.* v. *McClung*, 51 Fed. Rep. 868; *Re Huttman*, 70 Fed. Rep. 699; *Billings* v. *United States*, 23 C. Cl. 166; Act of March 5, 1890, 26 Stat. 17; *United States* v. *Heinszen*, 206 U. S. 370, 382.

The hearing accorded plaintiffs in error met the requirements of § 18. Having acquiesced not only in the manner of conducting the original hearing, but the rehearing as well, any objection by them at this time comes too late. *Union Bridge Co.* v. *United States*, 204 U. S. 364, 369; *Monongahela Bridge Co.* v. *United States*, 216 U. S. 177.

Inquiry as to whether a bridge is a reasonable obstruction to navigation is a legislative and not a judicial one. *Bridge Company* v. *United States*, 105 U. S. 475.

The proceeding is not the exercise of the power of eminent domain. Cooley's Const. Lim., § 564. The ac-

tion of Congress in requiring the alteration of bridges across navigable waterways to meet the needs of navigation is not the exercise of the power of eminent domain but of police power, to the exercise of which uncompensated obedience is required. *Union Bridge Co.* v. *United States,* 204 U. S. 364; *Gibson* v. *United States,* 166 U. S. 269; *Scranton* v. *Wheeler,* 179 U. S. 141; *New Orleans Gas Light Co.* v. *Drainage Commissioners,* 197 U. S. 453; *C., B. & Q. R. R. Co.* v. *Drainage Commissioners,* 200 U. S. 561; *West Chicago Street Railroad* v. *Chicago,* 201 U. S. 506.

And see as to hearings, *The Japanese Immigrant Case,* 189 U. S. 86; Cooley's Const. Lim., § 496; *Spencer* v. *Merchant,* 125 U. S. 345; *Hibben* v. *Smith,* 191 U. S. 310; Cooley on Taxation, 3d ed., 59; *King* v. *Mullins,* 171 U. S. 429.

The parties to this proceeding are not in a position to question the sufficiency of the hearing in this case, in the respects to which they refer, because they not only acquiesced but participated in the procedure followed without any objection whatsoever.

MR. JUSTICE HARLAN delivered the opinion of the court.

This is a criminal Information against the Hannibal Bridge Company, the Wabash Railroad Company, and the Missouri Pacific Railway Company, under the eighteenth section of the River and Harbor Appropriation Act of Congress of March 3, 1899, c. 425, 30 Stat. 1121.

That section is as follows: "Whenever the Secretary of War shall have good reason to believe that any railroad or other bridge now constructed, or which may hereafter be constructed, over any of the navigable waterways of the United States is an unreasonable obstruction to the free navigation of such waters on account of insufficient height, width of span, or otherwise, or where there is difficulty in passing the draw opening or the draw span of such

bridge by rafts, steamboats, or other water craft, it shall be the duty of the said Secretary, first giving the parties reasonable opportunity to be heard, to give notice to the persons or corporations owning or controlling such bridge to so alter the same as to render navigation through or under it reasonably free, easy and unobstructed; and in giving such notice he shall specify the changes recommended by the Chief of Engineers that are required to be made, and shall prescribe in each case a reasonable time in which to make them. If, at the end of such time the alteration has not been made, the Secretary of War shall forthwith notify the United States District Attorney for the district in which such bridge is situated, to the end that the criminal proceedings hereinafter mentioned may be taken. If the persons, corporation, or association owning or controlling any railroad or other bridge shall, after receiving notice to that effect, as hereinbefore required, from the Secretary of War, and within the time prescribed by him willfully fail or refuse to remove the same or to comply with the lawful order of the Secretary of War in the premises, such persons, corporation, or association shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding five thousand dollars, and *every month* such persons, corporation or association shall remain in default in respect to the removal or alteration of such bridge shall be deemed a new offense, and subject the persons, corporation or association so offending to the penalties above prescribed: *Provided,* That in any case arising under the provisions of this section an appeal or writ of error may be taken from the district courts or from the existing circuit courts direct to the Supreme Court either by the United States or by the defendants."

Proceeding under the above statute, certain vessel owners, masters, pilots and others interested in the navigation of the Mississippi River, represented to the Secre-

tary of War, by petition, that the bridge over that river at Hannibal, Missouri, had become and was an unreasonable obstruction to free navigation by reason of the location of the then existing draw-openings, the entire absence of guard-fences or sheer-booms, and the presence of artificial deposits of stone about the piers of the bridge, which they believed had increased the current through the draw-openings to a dangerous extent. The Secretary was asked by the petitioners to exercise the powers granted to him by the above act, and after due hearing of all interested persons or corporations, require such alterations to be made in and about the bridge as would render navigation through it reasonably free, easy and unobstructed.

The matter was referred by the War Department to an officer of the Engineer Corps of the Army, for report. That officer, after examination, reported that from personal observation and experience, especially during the great flood of June, 1903, he was satisfied that the bridge was an unreasonable obstruction to navigation, by reason of the wrong location of the draw-spans, the absence of guard-fences or sheer-booms, and the deposit of rip-rap in considerable quantities about the piers and abutments. The report recommended certain changes in order that navigation through the bridge might be reasonably safe, easy and unobstructed. In these recommendations the Chief of Engineers concurred. "The character of this bridge as an unreasonable obstruction to navigation is," the report stated, "so generally understood, and has been so well established by former hearings, that further hearings would appear to be superfluous; but, as the alteration of the structure so as to make it reasonably safe for navigation will be expensive, and on that account will probably be antagonized by its owners, I believe it would be best to hold another hearing, at which all parties in interest may be heard; the said new hearing to take place as soon as practicable."

Subsequently, under date of March 10, 1906, there was issued by the War Department an official. communication to the Bridge Company, as follows: "Take notice that, Whereas, The *Secretary of War* has good reason to believe that the drawbridge, commonly known as the Wabash Railway Bridge, owned or operated by the Hannibal Bridge Company (and by the Wabash Railroad Company), *inter alia,* across the Mississippi River at Hannibal, Missouri, is an unreasonable obstruction to the free navigation of the said Mississippi River (which is one of the navigable waterways of the United States) on account of unsuitable location of the draw-spans and protection crib, the lack of suitable guard-fences or sheer-booms, and the presence of obstructing rip-rap around the piers, there being difficulty in passing the draw-openings or draw-spans of such bridge by rafts, steamboat or other water craft; and whereas, the following alterations, which have been recommended by the Chief of Engineers, are required to render navigation through it reasonably free, easy, and unobstructed, to wit: (Here follows specifications of proposed alterations) . . . And whereas, to March 15, 1907, is a reasonable time in which to alter the said bridge as described above. Now, therefore, in obedience to, and by virtue of, section eighteen of an act of Congress of the United States entitled 'An Act making appropriations for the construction, repair and preservation of certain public works on rivers and harbors, and for other purposes,' approved March 3, 1899 (30 Stat., c. 425, 1153), the *Secretary of War* hereby notifies the said Hannibal Bridge Company to alter the said bridge as described above, and prescribes that said alterations shall be made and completed on or before March 15, 1907."

Similar notices were given to the Wabash Railroad Company and the Missouri Pacific Railroad Company, respectively, each notice being signed by "Robert Shaw Oliver, Asst. Secretary of War."

Such a hearing as that notice required was had at Rock Island, Illinois, before an Engineer officer designated by the War Department, the parties interested having been previously notified of the time, place and object of the hearing. It appears also that notice of the hearing was given through newspapers, published at St. Paul, St. Louis and Hannibal. Among those present at the hearing were numerous river men, masters and pilots. The Bridge Company was also present by counsel and participated in the investigation. After the hearing was concluded the Engineer officer who presided made a report to the Chief of Engineers, in which he said: "The law and the orders of the Department have been fully complied with; every opportunity has been given the representatives of this bridge to present their full views; the bridge to-day is an illegal structure; it is an unreasonable obstruction to the present navigation of the Mississippi River; there is great difficulty in passing its draw openings at high stages; the continuance of existing conditions is liable at any moment to lead to an appalling disaster and great loss of life; previous recommendations as to alterations necessary in this bridge to render navigation through it reasonably free, easy and unobstructed are concurred in."

He further said that "the bridge is an unreasonable obstruction, and that there is difficulty in passing its draw, seems overwhelmingly shown by the statements and affidavits of those competent to give opinions on such a subject. The river pilots are almost unanimous in their views regarding this bridge."

It should be here stated that, so far as the record shows, no objection was made by the Bridge Company as to the manner in which the hearing was conducted.

Subsequently, under date of March 10, 1906, in an official notice to the Bridge Company, signed by "Robert Shaw Oliver, Asst. Secretary of War," the Secretary of War (Mr. Taft) expressed his approval of the recommenda-

tions of the Chief of Engineers, and directed the Bridge Company, on or before March 15, 1907, to make the alterations suggested by that officer. Later on, the Bridge Company requested a hearing before the Secretary of War himself. The Secretary assented to another hearing being had, but said that it must be held before the Judge Advocate General of the Army. After seasonable notice to the parties interested in the navigation of the river, the latter officer heard the case anew and reported to the Secretary of War that the case was covered by the act of March 3, 1899, c. 425, 30 Stat. 1121, and that the action theretofore taken by the War Department should be adhered to. The Secretary of War formally approved the report of the Judge Advocate General, and directed the Chief of Engineers to "act accordingly."

The Bridge Company failed or refused to make the required alterations of the bridge. Then followed the Information in question, the Wabash Railroad Company and the Missouri Pacific Railway Company being made codefendants with the Bridge Company on the ground that they owned or controlled the bridge.

There were two counts in the Information; the first count, charging the defendants with having willfully failed and refused to make the above alterations in the bridge, within the time prescribed by the Secretary of War, and to comply with the order of that officer; the second count charging the willful failure and refusal of the defendants to make such alterations within one month after the time allowed by the Department.

A demurrer to the Information was overruled, and plea of not guilty entered. The jury found the Bridge Company and the Wabash Railroad Company each guilty, but by direction of the court it returned a verdict of not guilty as to the Missouri Pacific Railway Company. Judgment was rendered in favor of the United States against the Bridge Company for $2,500 on each count of the Infor-

mation. A like judgment was rendered against the Wabash Railroad Company.

The assignments of error are very numerous. But we feel constrained to say that no one of them causes a serious doubt as to the correctness of the judgment sought to be reviewed. This court has heretofore held, upon full consideration, that Congress had full authority, under the Constitution, to enact § 18 of the act of March 3, 1899, c. 425, 30 Stat. 1153, and that the delegation to the Secretary of War of the authority specified in that section was not a departure from the established constitutional rule that forbids the delegation of strictly legislative or judicial powers to an executive officer of the Government. All that the act did was to impose upon the Secretary the duty of attending to such details as were necessary in order to carry out the declared policy of the Government as to the free and unobstructed navigation of those waters of the United States over which Congress in virtue of its power to regulate commerce had paramount control. It is also firmly settled that such alterations of bridges over the navigable waters of the United States as the Chief of Engineers recommended, and as the Secretary of War required to be made after notice and hearing the parties interested, was not a taking of the property of the owners of such bridges within the meaning of the Constitution. *Union Bridge Company* v. *United States*, 204 U. S. 364; *Monongahela Bridge Co.* v. *United States*, 216 U. S. 177; *Field* v. *Clark*, 143 U. S. 649; *Buttfield* v. *Stranahan*, 192 U. S. 470.

What the Secretary did in relation to the bridge here in question seems to have been in substantial, if not in exact accordance with the statute. He was officially informed, through the Engineer Corps, that the complaints that came to him from many sources as to the Hannibal bridge were sufficient to require such action on his part as the statute authorized. He ordered a hearing, first causing notice to be given to the parties interested of the time and

place of the hearing. We cannot doubt from the record
that the hearing was adequate and was fairly conducted.
The result of the hearing was a recommendation, concurred
in by the Chief of Engineers, that certain alterations of
the bridge were demanded by the public interests. There
was a second hearing, with a like result. Then the Secre-
tary acted and directed the making of such alterations in
the bridge as had been found to be necessary. Of the char-
acter and extent of those alterations the Bridge Company
was notified by an official communication from the War
Department. It is true that that communication was
signed by the Assistant Secretary of War, and not by the
Secretary himself. And that fact is relied upon to invali-
date the entire proceeding. There is no merit in this objec-
tion. The communication signed by the Assistant Sec-
retary shows, upon its face, that it was from the War
Department and from the Secretary of War, and that the
Secretary, without abrogating his authority under the
statute, only used the hand of the Assistant Secretary in
order to give the owners of the bridge notice of what was
required of them under the statute. It is physically im-
possible for the head of an executive department to sign,
himself, every official communication that emanates from
his Department.

Equally without merit is the objection that the nature
and character of the required alterations were not suffi-
ciently indicated. This is a mistake. The communication
from the War Department was full and adequate. The
owners of the bridge could have had no reasonable doubt
as to what was expected and required of them.

The defendants also insist that their bridge was con-
structed under the authority of a special act of Congress
of July 25, 1866 (14 Stat. 244, c. 246), and that its main-
tenance, as constructed, is not affected by a subsequent
general appropriation act, like the one of which the above
§ 18 forms a part. This view cannot be sustained. The

act of July 25, 1866, 14 Stat. 244, c. 246, expressly reserves the right to alter or amend it so as to prevent or remove all material obstructions to the navigation of said river by the construction of bridges.  In the *Union Bridge Case*, above cited, it appeared that the bridge was required by the Secretary of War to be altered, at the expense of the owners.  The point was made that the bridge having been originally erected under the authority of the State of Pennsylvania and without objection from the General Government, the power of the Secretary and of Congress did not go so far as the Government claimed.  But this court said, 204 U. S., p. 400: "Although the bridge, when erected under the authority of a Pennsylvania charter, may have been a lawful structure, and although it may not have been an unreasonable obstruction to commerce and navigation *as then carried on,* it must be taken, under the cases cited, and upon principle, not only that the company when exerting the power conferred upon it by the State, did so with knowledge of the paramount authority of Congress to regulate commerce among the States, but that it erected the bridge subject to the possibility that Congress might, at some future time, when the public interest demanded, exert its power by appropriate legislation to protect navigation against unreasonable obstructions.  Even if the bridge, in its original form, was an unreasonable obstruction to navigation, the mere failure of the United States, at the time, to intervene by its officers or by legislation and prevent its erection, could not create an obligation on the part of the Government to make compensation to the company if, at a subsequent time, and for public reasons, Congress should forbid the maintenance of bridges that had become unreasonable obstructions to navigation.  It is for Congress to determine when it will exert its power to regulate interstate commerce.  Its mere silence or inaction when individuals or corporations, under the authority of a State, place unreasonable obstructions in the waterways

of the United States, cannot have the effect to cast upon the Government an obligation not to exert its constitutional power to regulate interstate commerce except subject to the condition that compensation be made or secured to the individuals or corporation who may be incidentally affected by the exercise of such power. The principle for which the Bridge Company contends would seriously impair the exercise of the beneficient power of the Government to secure the free and unobstructed navigation of the waterways of the United States."

We have said enough to dispose of every essential question made in the case or which requires notice.

*Judgment affirmed.*