## SOUTHERN RY. CO. v. UNITED STATES.
### No. 7971.

Circuit Court of Appeals, Fifth Circuit.
Feb. 15, 1937.

Harry H. Smith, of Mobile, Ala., for appellant.

Francis H. Inge, U. S. Atty., of Mobile, Ala., for the United States.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

Appellant, Southern Railway Company, was convicted of violating the penal provisions of section 18 of the rivers and harbors act of March 3, 1899 (33 U.S.C.A. § 502) on an information which charged willful refusal and failure to obey an order of the Secretary of War to alter a railroad bridge, owned and controlled by it, over the Tombigbee river at Jackson, Ala. A fine of $1,000 was imposed. Error is assigned to the overruling of a demurrer.

The information recited the order of the Secretary of War, which specified the alterations to be made, and alleged:

"That notwithstanding the said notices to make said alterations on said bridge, the said defendant, the Southern Railway Company did wilfully fail and refuse and still continues to wilfully fail and refuse to make said alterations so prescribed in said notices and to comply with the lawful orders of the said Secretary of War."

In substance, the act authorizes the Secretary of War, for good cause, upon reasonable notice, to order specified alterations of an existing bridge over a navigable river so that it will not be an unreasonable obstruction to commerce on the river. It does not in terms authorize him to order the removal of a bridge. The right of appeal is granted to the United States as well as the defendant when a suit is brought to enforce the penalty. As to the enforcement of the penalty, the act provides as follows:

"If the persons, corporation, or association owning or controlling any railroad or other bridge shall, after receiving notice to that effect, as hereinbefore required, from the Secretary of War, and within the time prescribed by him willfully fail or refuse to remove the same or to comply with the lawful order of the Secretary of War in the premises, such persons, corporation, or association shall be deemed guilty of a misdemeanor and on conviction thereof shall be punished by a fine." For greater

certainty, the section is set out in full in the margin.[1]

Appellant contends that the statute must be strictly construed; that the offense consists of two elements, one, failure to comply with the order; two, failure to remove the bridge; and that the information is fatally defective in not charging failure to remove the bridge as well as refusal to alter it.

The validity of the law has been upheld in the following cases: Union Bridge Co. v. U. S., 204 U.S. 364, 27 S.Ct. 367, 51 L.Ed. 523; Monongahela Bridge Co. v. U. S., 216 U.S. 177, 30 S.Ct. 356, 54 L.Ed. 435; Hannibal Bridge Co. v. U. S., 221 U. S. 194, 31 S.Ct. 603, 55 L.Ed. 699; Louisville Bridge Co. v. U. S., 242 U.S. 409, 37 S.Ct. 158, 61 L.Ed. 395. In none of these cases was the precise question here raised considered or decided, but examination of the opinions indicates that the information in each case was in practically the same form as in the case at bar.

The general rule is that criminal statutes are to be strictly construed and a criminal information, like an indictment, must charge every element of the crime, in order that the accused and the court may know the exact offense intended to be charged, and the record be sufficient to support a plea of former acquittal or conviction. Evans v. U. S., 153 U.S. 584, 14 S.

---

1 "Whenever the Secretary of War shall have good reason to believe that any railroad or other bridge over any of the navigable waterways of the United States is an unreasonable obstruction to the free navigation of such waters on account of insufficient height, width of span, or otherwise, or where there is difficulty in passing the draw opening or the draw span of such bridge by rafts, steamboats, or other water craft, it shall be the duty of the said Secretary, first giving the parties reasonable opportunity to be heard, to give notice to the persons or corporations owning or controlling such bridge so to alter the same as to render navigation through or under it reasonably free, easy, and unobstructed; and in giving such notice he shall specify the changes recommended by the Chief of Engineers that are required to be made, and shall prescribe in each case a reasonable time in which to make them. If at the end of such time the alteration has not been made, the Secretary of War shall forthwith notify the United States district attorney for the district in which such bridge

is situated, to the end that the criminal proceedings hereinafter in this section mentioned may be taken. If the persons, corporation, or association owning or controlling any railroad or other bridge shall, after receiving notice to that effect, as hereinbefore required, from the Secretary of War, and within the time prescribed by him willfully fail or refuse to remove the same or to comply with the lawful order of the Secretary of War in the premises, such persons, corporation, or association shall be deemed guilty of a misdemeanor and on conviction thereof shall be punished by a fine not exceeding $5,000, and every month such persons, corporation, or association shall remain in default in respect to the removal or alteration of such bridge shall be deemed a new offense, and subject the persons, corporation, or association so offending to the penalties above prescribed: Provided, That in any case arising under the provisions of this section an appeal or writ of error may be taken from the district courts direct to the Supreme Court either by the United States or by the defendants."

Ct. 934, 38 L.Ed. 830. But it is also the general rule that an exception or proviso constituting a defense need not be negatived in an indictment. McKelvey v. U. S., 260 U.S. 353, 43 S.Ct. 132, 67 L.Ed. 301.

■ That part of the statute providing for a penalty and its enforcement is somewhat ambiguous. The primary purpose of the law is to accomplish the removal of an unreasonable obstruction to navigation by alteration of an existing bridge without resorting to the drastic action of demolishing the bridge. It necessarily follows that if a bridge over a navigable stream is entirely removed, the object of the law is accomplished and the removal would be a complete defense to an action brought to enforce the penalty, without any statute to that effect.

■ Section 18 has civil features as well as criminal. While it provides for enforcement of the order of the Secretary of War by a proceeding in the nature of a criminal information, the right of appeal given to the United States injects a civil feature. In respect of this statute, the rule of strict construction is considerably weakened. But whether the statute be considered civil or criminal in its nature, it must be construed with common sense, so as to give effect to the intention of Congress. U. S. v. Alford, 274 U.S. 264, 47 S.Ct. 597, 71 L.Ed. 1040; U. S. v. Giles, 57 S.Ct. 340, 81 L.Ed. —, decided February 1, 1937. As we construe the statute, it does not create two offenses or one offense consisting of two elements. It plainly creates only the offense of willful refusal to comply with a valid order of the Secretary of War to alter a bridge which is an unreasonable obstruction to navigation. So construed, it is clear that the provision to the effect that the offense is not committed unless the defendant had also willfully failed or refused to remove the bridge is to be considered an exception providing a defense. Furthermore, considering the evidence in the record, wherein it was stipulated the alterations had not been made and the bridge had not been removed, it is certain that the omission from the information of an allegation charging that the railroad had not removed the bridge did not affect the substantial rights of appellant. If the lower court erred, it was upon a technical matter of pleading. To reverse and remand so as to permit an amendment of doubtful necessity would be useless. 28 U. S.C.A. § 391; 18 U.S.C.A. § 556; Hagner

v. U. S., 285 U.S. 427, 52 S.Ct. 417, 76 L. Ed. 861.

This assignment does not present reversible error.

■ Error is assigned to the denial of a motion for verdict. On this appellant contends that it was not shown that the Southern Railway Company either owns or controls the bridge; that it was shown the railroad was financially unable to make the alterations, therefore did not "willfully" disobey the order; that it was shown that the alterations ordered required the construction of a new bridge, which could not be done without express consent of Congress; that the bridge could not be removed without the consent of the Interstate Commerce Commission, under the provisions of the Interstate Commerce Act, § 1 (18), as added by Transportation Act of 1920, § 402, 49 U.S.C.A. § 1 (18), which provides that no railroad subject to the act may abandon any part of its line without such consent. ·

There is evidence in the record tending to show the following facts: The bridge is on a line of railroad running from Mobile to Marion Junction, probably owned by the Mobile & Birmingham Railway Company, and was built prior to 1890. The road is a branch of the Southern Railway Company, in charge of one of that company's division superintendents. The bridge is a three-span structure. The end spans, 275 feet long, are fixed. There is not sufficient depth of water or vertical clearance for towboats or other steamboats to go through these spans. The center span, 260 feet long, is a swing span, supported on a center pier, protected by fenders. The navigable channel is through the center span with clearances of 90 and 87 feet. Prior to 1915, craft passing through the bridge were stern wheel packet boats and tow boats with one or two barges, the tows not over 30 to 40 feet in width, and the openings were ample. After 1915, the type of tows changed to tow boats with as many as seven barges, the tow usually 75 feet wide by 420 feet in length. Passage through the bridge by these tows was difficult and dangerous. In the calendar year 1928 tows on the river transported over 1,379,000 tons of freight, about equal to the tonnage over the bridge. Prior to August 1, 1927, complaint was made of the bridge by navigation interests using the river and the United States District Engineer recommended that it was necessary, in order to render navigation

reasonably free, to increase the clearance width, normal to the channel, to 200 feet. By direction of his superiors, the matter was taken up by him with the Southern Railway Company to ascertain whether that company was willing to make the change. The Southern Railway Company asked for a continuance of the matter until February 15, 1928, on the ground that time was required to consider courses of action, financing, etc. This request was granted. Nothing was done to alter the bridge. Further investigation was made and a public hearing was had in Mobile, on June 24, 1929, after notice to all interested parties. Facts were brought out at this hearing showing accidents caused by the narrow opening of the bridge and its danger to navigation. Recommendation for the alteration of the bridge was again made by the district engineer, was approved by the division engineer and the chief of engineers. On September 20, 1929, a notice was issued by the Secretary of War, requiring that the bridge be altered so as to provide a draw opening 200 feet wide, with suitable fenders, and a minimum vertical clearance of 52 feet above ordinary high water. Two years and three months from date of service of the notice was fixed as a reasonable time in which to alter the bridge, say January 1, 1932. Thereafter the Southern Railway, through its vice president and general counsel, applied for an extension of time on the ground that it was then financially unable to make the alterations. Time for completing the alterations was extended to January 7, 1933, about another year, by the Secretary of War. The extension lapsed and nothing had been done. More than 30 days thereafter, on February 8, 1933, the United States Attorney filed the information. At the trial it was stipulated that the alterations ordered had not been made and the bridge had not been removed. In September, 1929, when the order was issued, the Southern Railway Company had in its treasury securities of the par value of $43,000,000 and of the market value of $60 to $78 per hundred, worth $25,800,000 at the lower estimate. In 1931, the South-

ern Railway Company failed to earn its operating expenses and fixed charges by $5,696,000. And in 1932 by $10,992,000. In 1932 the Southern Railway borrowed from the RFC about $14,750,000, pledging collateral at the rate of 125 per cent. of market value, say $18,437,000. The alteration of the bridge ordered would require the removal of the center pier and the building of three new piers, still using two of the old piers. The estimated cost was $809,000. No attempt was ever made to finance this expense.

It is apparent the action of the Secretary of War was based on sufficient inquiry and was neither arbitrary nor hasty. There was sufficient evidence before the jury to support the conclusion that the Southern Railway Company controlled the bridge. It was not necessary to show that that company also had the legal title. Congress in enacting the law doubtless realized that large railroad systems are usually made up of separate corporate units, controlled by stock ownership, leases, or trackage agreements, but operated under one management as a single system. While the alteration of the bridge would be extensive, it was not thereby made a new bridge. Consent of Congress by special act was not necessary. Nor was the consent of the Interstate Commerce Commission necessary. Of course, traffic over the bridge would be interrupted while the work was going on, but that situation could be taken care of by the temporary rerouting of trains or by ferriage, as is frequently made necessary by storm or flood. The alteration of the bridge would not amount to an abandonment of the line. Conceding that the impossibility of financing the alteration would be a defense, it is plain that when the order was issued the railroad was amply able financially to do the work.

On the facts shown the case was for the jury and did not present a question of law for the judge. It was not error to deny the request for an instructed verdict.

Other assignments are without merit and require no discussion. The record presents no reversible error.

Affirmed.