Whaley, Chief Justice,
delivered the opinion of the court:
The plaintiffs, as receivers of the Norfolk Southern Railroad Company, bring this suit to recover the costs of tearing down the old bridge and erecting a new bridge over the Albemarle & Chesapeake Canal, an artificial, navigable waterway connecting the southern branch of the Elizabeth River with headwaters of the North Landing River, and with Currituck Sound, in the State of Virginia.
The Norfolk Southern Railroad at all times hereinafter mentioned was the owner of the right-of-way of 75 feet in *367 width over which the canal passed and had constructed a bridge and fender system across the waters of the Albemarle & Chesapeake Canal with a draw of 46 feet 3 inches in the clear and continuously possessed, used, and occupied said right-of-way in conducting its business of a common carrier of passengers and freight over said line of railroad.
On March 19,1913, the United States purchased the Albe-marle & Chesapeake Canal cut and right-of-way as authorized by the Eiver and Harbor Appropriation Act of July 25, 1912, 37 Stat. 201, 206. When the purchase was made the canal had locks at Great Bridge, between the railroad bridge and Elizabeth Eiver, which controlled the flow of the tidal waters. After the purchase by the Government of the canal these locks were removed, and, as a result of the removal of these locks, the canal under the railroad bridge became a tidewater canal.
The purchase of the canal by the Government was a part of the development of an intracoastal waterway from Boston, Massachusetts, to the Eio Grande Eiver, Texas. The canal then had a width of 50 feet and a depth of 8 feet. The Government, in the course of development of the inland waterway, deepened the canal to 12 feet and extended its width to 90 feet. The width of the canal at the bridge remained the same as formerly. As a result a raceway was created between the fenders of the bridge which was hazardous and dangerous for vessels going through the draw of the bridge.
In 1921 the Government ordered, after hearing, the Norfolk Southern Eailroad to either remove this bridge and fenders or alter it so as to provide a draw opening between the fenders of at least 80 feet. This order was based on the authority given the Secretary of War under section 18 of the act of Congress approved March 3, 1899, 30 Stat. 1121, 1153, 1154.
The time given within which to remove the old bridge or make the alterations was one year from the date of notice. Extensions were granted from time to time by the Secretary of War. The Norfolk Southern Eailroad complied with the order by the destruction of the old bridge and the erection of a new bridge according to the plans mutually agreed upon *368 by the engineers of both parties. The bridge was completed in November 1928 at a cost to the railroad company of $113,617.75.
It is well-settled law that, under the clause of the Constitution to regulate commerce, Congress has the power to free navigation from unreasonable obstructions by compelling the removal of bridges which do so obstruct free navigation. Requiring the removal or alteration of unreasonable obstructions is not taking private property for public use within the meaning of the Constitution.
In Union Bridge Company v. United States, 204 U. S. 364, 401, the court held:
* * * In conformity with the adjudged cases, and in order that the constitutional power of Congress may have full operation, we must adjudge that Congress has power to protect navigation on all waterways of the United States against unreasonable obstructions, even those created under the sanction of a State, and that an order to so alter a bridge over a waterway of the United States that it will cease to be an unreasonable obstruction to navigation will not amount to a taking of private property for public use for which compensation need be made.
See Monongahela Bridge v. United States, 216 U. S. 177; Hannibal Bridge Company v. United States, 221 U. S. 194; and Louisville Bridge Company v. United States, 242 U. S. 409.
Therefore the order of removal of the old bridge and the election of the railroad to erect a new bridge in accordance with the plans of the War Department did not require compensation to be paid to the railroad and was within the powers delegated to the Secretary of War by the provisions of section 18 of the Act of 1899, supra.
In Union Bridge Company, supra, at page 403 the court also stated:
Some stress was laid in argument upon the fact that compliance with the order of the Secretary of War will compel the Bridge Company to make a very large expenditure in money. But that consideration cannot affect the decision of the questions of constitutional law in *369 volved. It is one to be addressed to the legislative branch of the Government. It is for Congress to determine whether, under the circumstances of a particular case, justice requires that compensation be made to a person or corporation incidentally suffering from the exercise by the National Government of its constitutional powers.
However, in 1936 Congress passed “A bill for the Relief of the Norfolk Southern Railroad Company” which reads as follows:
Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That jurisdiction is hereby conferred upon the Court of Claims of the United States, notwithstanding limitations upon the jurisdiction and power of such court, to hear, determine, and render judgment upon the claim of the Norfolk Southern Railroad Company against the United States, arising out of or incident to the removal of an old bridge and the construction of a new drawbridge and fender system over the Albemarle and Chesapeake Canal, now the Virginia cut of the Inland Waterway, near Great Bridge, Virginia, to comply with orders of the War Department [49 Stat. 2211]. [Italics supplied.]
It is contended by the defendant that the above bill “simply provided a forum to which the plaintiffs might resort to have their cause of action determined ‘according to applicable legal principles’ which require a dismissal of the petition.” The contention is made that the court cannot render judgment for the cost of the removal of the old bridge and the construction of the new drawbridge and fender system because the cases above cited held that the Government is immune from liability.
The answer to this is found in the hearings before the Committees of the Congress and is set forth in the reports of the Congressional Committees on the bill. At that time all the cases construing the powers granted the Secretary of War under the Act of March 3, 1899, were before the Committee and also the letter from the Secretary of War opposing the passage of the bill and the assertion that the plaintiff had no legal or equitable rights. Nevertheless the report of the Com *370 mittee on Claims of the House of Representatives, Report No. 234,74th Congress, 1st Session, sets forth a full history of the case with all the facts and under Article 6 of the report the Committee stated:
6. That the requirement of Norfolk Southern Railroad Co. to comply with said order, and the taking of its property in widening said canal, was unmoral, inequitable, and unjust, and Norfolk Southern Railroad Co. has a moral, legal, and equitable claim against the United States of America for the expense to which it was put in complying with said order of the War Department.
When the bill reached the Senate, the Senate Committee on Claims adopted the House Report as a part of its report, No. 1492, 74th Congress, 2d Session, stating:
The facts are fully set forth in House Report No. 234, Seventy-fourth Congress, first session, which is appended hereto and made a part of this report.
It is clear from the above that the intention of Congress was to create a liability where heretofore there was no liability.
In this case to hold otherwise would render the act meaningless and absurd. All the facts were before the Congress as well as the Supreme Court cases. Congress was fully aware that under the existing law the Government was immune from liability to the plaintiff.
It is our view that the jurisdictional act gave a cause of action to the railroad company for which the Government is made liable, and which liability did not exist before the passage of the special act.
It is evident from the subsequent actions of the Congress that the policy of nonremuneration to the owners of bridges, which had to be enlarged, lengthened, removed, or replaced, was to undergo a change and that in the future compensation should be allowed when the owners of bridges over navigable waters were compelled to make alterations under orders of the War Department.
Our construction of the special act is strengthened and confirmed by the subsequent act of the Congress. A change in plan and a different policy was made. When an obstruc *371 tion to a navigable stream was ordered to be altered or removed by the Secretary of War compensation was allowable.
In 1939 Congress passed a general bill apportioning the expense between the owner and the Government. This bill was vetoed by the President. In 1940 a similar bill was passed by the Congress and was vetoed by the President. The Congress passed the bill over the veto of the President and the bill is now a law of the land [54 Stat. 497].
This legislation shows the purpose of Congress and sheds light on the doubtful parts of the special act in helping to interpret what Congress really meant. The law is clear and well settled that—
When several acts of Congress are passed touching the same subject-matter, subsequent legislation may be considered to assist in the interpretation of prior legislation upon the same subject. Cope v. Cope, 137 U. S. 682; United States v. Freeman, 3 How. 556. [Tiger v. Western Investment Co., 221 U. S. 286, 309.]
Construction of the new bridge with fender system and the destruction of the old bridge, less its salvage value, entailed a cost to the Norfolk Southern Railroad Company in the sum of $113,617.75. From this amount must be deducted the direct or special benefits which have accrued or will accrue to the owner of the new bridge by the substitution of a new bridge for the old one. By a stipulation of the parties this amount is $26,995.37.
The plaintiff is uot entitled to recover the cost of installing the trestles and extending the fender system in 1924. This was work of a temporary nature during the extensions of the time asked for by the plaintiff. It was no part of the permanent structure required and afterwards erected.
Plaintiff is entitled to a judgment in the sum of $86,622.38.
It is so ordered.
Madden, Judge; Jones, Judge; and Littleton, Judge, concur.
Whitaker, Judge, took no part in the decision of this case.