**DEPARTMENT OF HIGHWAYS OF LOUISIANA**
v.
**UNITED STATES.**
No. 339–52.

United States Court of Claims.
March 5, 1958.

Prentice E. Edrington, Washington,. D. C., for the plaintiff. W. Crosby Pegues, Jr., and Philip K. Jones, Baton Rouge, La., were on the brief.

Kathryn H. Baldwin, Washington, D.. C., with whom was Asst. Atty. Gen.. George Cochran Doub, for defendant.

MADDEN, Judge.

The plaintiff, prior to February 3,. 1949, applied to the Federal Government. for permission to build a bridge across the Gulf Intracoastal Waterway, near Houma, Louisiana. It submitted a map and plans showing the location of the proposed bridge as well as its structural

details. The Government gave public notice to all interested persons, and held hearings on the question of whether the permission should be granted. On February 3, 1949, the Chief of Engineers of the Army, and on February 4, 1949, the Secretary of the Army, approved the plans. The certificate of approval said that it was granted pursuant to Title V of the General Bridge Act of 1946, section 502, 60 Stat. 847, 33 U.S.C. § 525 (b). It also said that it would be null and void if construction of the bridge was not begun within one year.

On the plaintiff's application, the Chief of Engineers and the Secretary of the Army in 1950 extended the time within which construction might be commenced to February 4, 1952, and the time for completion of the bridge to February 4, 1954. In reliance upon the permit which it had been given, the plaintiff made a contract with a construction company which, on July 24, 1950, commenced work on the construction of the bridge. Its work was performed under the supervision of the Army Engineers' District Engineer at New Orleans, Louisiana.

On August 24, 1950, the District Engineer telegraphed to the plaintiff a notice that all work on the bridge should be suspended; that the District Engineer had given public notice that he was going to recommend changes in the plans. In response to this telegram the plaintiff wrote the District Engineer objecting to the proposed changes unless the Government was to pay the cost already incurred in obtaining the rights of way, and in the plaintiff's obligations to the contractor for work already done. Over the plaintiff's protests, the Chief of Engineers on September 12 and the Secretary of the Army on September 19, 1950 signed a "second permit" granting the plaintiff permission to erect a different type of bridge at a different location. The plaintiff was then obliged to abandon all work previously done by it and its contractor, secure new rights of way for bridge approaches, move power lines and incur other expenses in addition to the increased costs created by the new type of bridge specified in the permit. The plaintiff claims to have suffered a loss of $4,383.29. The petition does not allege that the federal officials concerned acted maliciously, arbitrarily or unreasonably.

The plaintiff's suit is based upon the theory that the permit granted to it, and later revoked, was a contract, and that its revocation was a breach of contract. The plaintiff suggests also that its suit may be one for just compensation for the taking of a property right, and thus founded upon the Fifth Amendment to the Constitution.

■ Congress, under its power to regulate interstate commerce, has power to legislate concerning the construction of bridges over navigable waters. Until 1884 Congress enacted no such legislation, and such bridges were built under authorizations granted by the states. 23 Stat. 133, 148, 33 U.S.C.A. § 494 note. By sections 9 and 10 of the Act of August 11, 1888, 25 Stat. 424, 425, the Secretary of War was authorized to order the alteration of bridges unreasonably obstructing navigation. In cases arising under later statutes of similar import, it has been held that such orders of the Secretary of War do not constitute a taking of the bridge owners' property and that the United States was not obliged to compensate the owner for the cost of alteration or removal of the bridge. Hannibal Bridge Co. v. United States, 221 U.S. 194, 31 S.Ct. 603, 55 L.Ed. 699; Monongahela Bridge Co. v. United States, 216 U.S. 177, 30 S.Ct. 356, 54 L.Ed. 435; Union Bridge Co. v. United States, 204 U.S. 364, 27 S.Ct. 367, 51 L.Ed. 523.

By the Act of March 3, 1899, 30 Stat. 1151, 33 U.S.C. § 401, it was for the first time required that one who proposed to erect a bridge over navigable waters first obtain the consent of Congress, and the approval of his plans by the Chief of Engineers and the Secretary of War. The Act of March 23, 1906, 34 Stat. 84, contained a similar provision, section 491 of 33 U.S.C. Both the 1899 Act (33 U.S.C. § 502) and the 1906 Act (33 U.S.C.

**344**

§ 494) contained provisions which expressly authorized the Secretary of War to, after hearing, order the alteration of bridges to remove obstructions to navigation, such alteration to be made at the expense of the owner. These sections applied to bridges authorized by Congress, and the plans of which had been approved by the Chief of Engineers and the Secretary of War, as well as those which had been built under State authority, before Federal permission was required. These sections also made it a crime for the owner of a bridge to fail to make alterations ordered by the Secretary of War.

In the Act of June 21, 1940, 54 Stat. 499, 33 U.S.C. § 517, Congress for the first time provided for the apportionment of costs between the owner and the Government, when bridges were ordered to be altered. But that statute applied only to railroad bridges, or to combined railroad and highway bridges. In 1952 the apportionment statute was amended to include highway bridges owned by a state. 66 Stat. 733, 33 U.S.C. § 516. This amendment came after the events involved in this suit, and the plaintiff does not assert any rights under it.

In 1946 Congress in its statute "To provide for increased efficiency in the legislative branch of the Government" included Title 5, The General Bridge Act of 1946, to eliminate the necessity of a special act of Congress whenever a bridge was to be erected over navigable waters. The Act gave general consent for the erection of all bridges, the locations, plans and specifications of which should be approved by the Chief of Engineers and the Secretary of War. In section 507 of this statute, 60 Stat. 849, 33 U.S.C. § 530, it was said that a part of one section of the 1899 Act, and all of the 1906 Act should not apply to bridges constructed pursuant to the 1946 Act. The permission to the plaintiff which is here involved was granted pursuant to the 1946 Act. Included, therefore, in the former provisions made inapplicable to such bridges were sections 494 and 495 of 33 U.S.C., which were sections of the 1906 Act. They contain authorization to the Secretary of War to require the removal or alteration of bridges which obstruct navigation, and provide penalties for the failure of the owner to obey such orders. But the 1946 Act did not provide that section 502 of 33 U.S.C. which, as we have seen, was contained in the 1899 Act, should be inapplicable to bridges built pursuant to the Act of 1946. And section 502 also gave authority to the Secretary of the Army to order the removal of bridges which obstructed navigation, and provided criminal penalties for failure to obey such orders.

Section 511 of the 1946 Act (60 Stat. 849, 33 U.S.C. § 525 note) provides as follows:

> "The right to alter, amend, or repeal this title is hereby expressly reserved as to any and all bridges which may be built under authority hereof."

The plaintiff urges that the insertion by Congress of this section shows that Congress was reserving to itself the drastic power of requiring the removal of bridges built pursuant to the 1946 Act, and was depriving the Secretary of War of that power which he had had under both the 1899 and the 1906 statutes, and under still earlier statutes.

If that was the intention of Congress in 1946, it was a complete reversal of a legislative policy adhered to for many decades and embodied in many statutes. Such a reversal would have called for mention in committee reports or elsewhere in the legislative history of the 1946 Act, but there is no such mention. Indeed, the context shows that Congress did not so intend. As we have seen, both the 1899 Act and the 1906 Act empowered the Secretary of War to order the removal of bridges which obstruct navigation, and provided criminal penalties for failure to comply with such orders. There was overlapping in these provisions of the two statutes, yet both were carried in the United States Code. The

1946 Act made inapplicable to the new bridges to be constructed under it all of the eight sections of the 1906 Act, including the sections here pertinent. But as to the 1899 Act, the 1946 Act made inapplicable to the new bridges only "the provisions of the first proviso of section 9 of the Act of March 3, 1899." Congress had both of the prior Acts before it, since they were both carried in the Code and were both named in the new statute. Apparently because of the overlapping in the two statutes, Congress chose to make only the earlier, the 1899 one, applicable to future bridges. There is no evidence here of any lack of awareness by Congress of the effect of its legislation.

Section 511 of the 1946 Act, quoted above, was apparently inserted by Congress out of an abundance of caution to avoid any impression that Congress was authorizing the creation of vested and irrevocable interests in the location of bridges. The power reserved to Congress is unconditional, whereas the power of the Secretary is conditioned upon his finding, after notice and hearing, that there is an unreasonable obstruction to navigation.

■ The plaintiff points to section 502(b) of the 1946 Act (33 U.S.C. § 525(b)) which authorizes the Chief of Engineers and the Secretary of War to impose, in the granting of bridge permits, specific conditions "relating to the maintenance and operation" of the bridge, which conditions should have the force of law. The plaintiff says that since no conditions were inserted in its first permit, its right was unconditional. But this section relates only to conditions as to the maintenance and operation of bridges, not to their removal when they unreasonably obstruct navigation. It does not overlap section 502 of 33 U.S.C., nor suggest its implied repeal.

■ The plaintiff urges that the procedure prescribed by section 502 of 33 U.S.C. was not complied with. We find that it was. The notice was given and the hearing was held by officers of the Army Engineers, the authorized representatives of the Secretary, and the new permit to build the bridge in the changed location was signed by the Secretary. We see no departure from the statutory procedure.

■ In the instant case the difficulty arose from the fact that after the hearing on March 30, 1948, which preceded the first permit, and before the permit was issued, the location of the proposed bridge was shifted some 546.5 feet from the location discussed at the hearing as a result of the plaintiff's attempt to provide the additional horizontal clearance requested by the navigation interests and by the Government. As a consequence, those interested in navigating the canal did not learn of the new location until construction work was started. They protested promptly and the Government's representative stopped the work reasonably promptly. Notice was again given and a second hearing was held on August 21, 1950. The second permit probably placed the bridge in a better location that the first one. It was unfortunate, and expensive to the plaintiff that the change was made. We think, however, that it was well within the expressly reserved powers of the Government to make it, and that no liability to the plaintiff was incurred.

The plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE and LITTLETON, Judges, concur.

WHITAKER, Judge, took no part in the consideration and decision of this case.