**BOSTON EDISON COMPANY,
Plaintiff, Appellant,**

v.

**GREAT LAKES DREDGE & DOCK COMPANY et al., Defendants, Appellees.**

**No. 7385.**

United States Court of Appeals,
First Circuit.

Heard Nov. 4, 1969.
Decided March 25, 1970.

William F. Manley, Boston, Mass., with whom Frank B. Frederick and Johnson, Clapp, Stone & Jones, Boston, Mass., were on brief, for appellant.

Robert V. Zener, Atty., Dept. of Justice, with whom William D. Ruckelshaus, Asst. Atty. Gen., Herbert F. Travers, Jr., U. S. Atty., and Raymond D. Battocchi, Atty., Dept. of Justice, were on brief, for the United States.

Before McENTEE and COFFIN, Circuit Judges, and CAFFREY, District Judge.

CAFFREY, District Judge.

This is an appeal from a judgment entered in the district court granting a motion for summary judgment in favor of the United States, co-defendant in an action brought by Boston Edison Company, (hereafter Edison), against the United States and Great Lakes Dredge & Dock Company (hereafter Great Lakes). Great Lakes was an independent contractor employed by the United States to conduct dredging operations to improve the navigability of the Chelsea River. The Chelsea River is a navigable stream flowing between Chelsea and East Boston, Massachusetts, and as a navigable stream it comes under the jurisdiction of the Secretary of the Army.

The facts which gave rise to this litigation may be summarized as follows: On January 3, 1949, Edison made a written request to the Secretary of the Army for permission to install and maintain seven submarine electric power

cables under the Chelsea River. On March 3, 1949, pursuant to that request, the Secretary of the Army, acting by the Corps of Engineers, issued a permit to Edison for the installation of the cables at a point about 280 feet downstream from the Chelsea Street bridge. The cables, running from Chelsea to East Boston, were to be installed 15 feet below the then river bottom. The permit as issued contained ten specific conditions spelled out therein and one of the principal issues in the case is the validity of Clause (g) contained in the permit which provides as follows:

"(g) That the United States shall in no case be liable for any damage or injury to the structure or work herein authorized which may be caused by or result from future operations undertaken by the Government for the conservation or improvement of navigation, or for other purposes, and no claim or right to compensation shall accrue from any such damage."

Clause (g) was inserted in the permit as one of the standard conditions required to be contained in the standard form permit ordinarily used for the letter of authorization, pursuant to the provisions of 33 C.F.R. 209.130(c) (2). Soon after the issuance of the permit the seven submarine cables were installed by Edison under the Chelsea River bottom where they have since remained at all material times.

On July 21, 1964, the Corps of Engineers notified Edison of its intention to dredge the Chelsea River in the vicinity of these electric cables. On July 31, 1964, Edison replied to this notice by requesting that "the utmost care must be exercised to prevent damage." Edison also requested that it be notified by the Engineers as to the identity of the contractor selected to conduct the dredging operations for the Government "in order that we may coordinate activities to prevent damage." On June 25, 1965, the United States entered into its contract with Great Lakes, and on the same day Great Lakes informed Edison that it was the contractor selected to perform the operations under the supervision of the Corps of Engineers. Various conferences ensued between representatives of Edison, Great Lakes, and the Army Engineers. There also was a substantial amount of correspondence between the parties concerning the conduct of the dredging operation.

On April 4, 1966, in the course of carrying out the dredging operation Great Lakes allegedly caused damage to Edison's submarine cables and on April 2, 1968 the instant suit was filed against both the United States and Great Lakes. Jurisdiction of the district court in the suit against the United States was based upon the Suits in Admiralty Act of March 9, 1920, 46 U.S.C. sec. 741 et seq. The complaint against the United States alleged (1) that the United States was negligent in planning, supervising, and conducting the dredging, and (2) that the United States was involved in an inherently dangerous and ultra-hazardous activity. The complaint sought recovery against Great Lakes in two counts, one on a negligence theory and the other on the theory that Edison was a third party beneficiary of the contract between Great Lakes and the United States and, as such, entitled to recover from Great Lakes by reason of its breach of the contract.

In its answer, among other defenses the United States relied on the exculpatory provisions of Clause (g) of the permit, contending that the clause precluded any liability to Edison on its part. The United States also counter-claimed against Edison for its costs of the litigation and reasonable attorney's fee. Edison's answer to the counterclaim challenged the constitutionality and legality of Clause (g) and also claimed that in any event the clause had been waived by the United States. Thereafter, a motion for summary judgment was filed by the United States and granted by the district court, which, however, made no ruling on the Government's counterclaim which is still pending, as are the counts against Great Lakes which did not file a motion for

summary judgment. The matter is properly before this court because the district court made the appropriate findings for the existence of appellate jurisdiction under Rule 54(b), Federal Rules of Civil Procedure, in a situation where the judgment entered dealt with fewer than all of the claims or parties.

The thrust of Edison's argument on appeal is an attack on various aspects of Clause (g) in the permit. Edison argues both that the clause as a matter of construction was not intended to cover liability in negligence and, alternatively, that the insertion of the clause in the permit was beyond the powers exercisable by the Secretary of the Army at the time of the issuance of the permit. The latter contention is premised largely on the dual facts that prior to the Secretary's issuance of the permit, Congress had enacted the Suits in Admiralty Act, 46 U.S.C. sec. 741 et seq., and the Federal Tort Claims Act, 28 U.S.C. sec. 2671 et seq., both of which waive sovereign immunity of the United States to suits premised on the negligent actions of its agents.

Edison first argues that Clause (g) does not purport to establish governmental exemption from liability for negligence primarily because of the failure of that clause to contain the word "negligent" or any synonym therefor. An examination of the language in Clause (g) indicates that it contains the words "The United States shall in no case be liable for any damage or injury." Broader language for a complete disclaimer of financial responsibility in any and all events is difficult for this court to imagine. Nevertheless, Edison argues that because the Federal Tort Claims Act had not been enacted in 1943, the first time the language of Clause (g) was used in a permit, the repetition of this language in the permit in issue herein, which was issued in 1949, should be construed in the light of the intent the draftsman had in first constructing Clause (g) in 1943. Edison then says that because the Federal Tort Claims Act was not in existence in 1943, the draftsman acting on behalf of the Government, knowing of its then sovereign immunity, did not attempt or intend to draft an exculpatory clause which would preclude governmental liability for negligence. The answer to this argument is that well prior to 1943 Congress had waived sovereign immunity in the area of maritime negligence by its enactment of the Suits in Admiralty Act on March 9, 1920. There likewise was a basis in 1943 for believing that in the light of this waiver of sovereign immunity under the Suits in Admiralty Act, the United States could be held liable in admiralty for damage to cables located under navigable waters, since injury to submarine cables by vessels or their anchors had been held to be within admiralty jurisdiction. Postal Telegraph Cable Co. v. P. Sanford Ross, 221 F. 105 (E.D.N.Y.1915); The Anita Berwind, 107 F. 721 (E.D.Pa.1901).

■ There is no reason for this court to suppose that the enactment by Congress on June 19, 1948 of the Admiralty Extension Act, 62 Stat. 496, amending 46 U.S.C. § 740, was unknown to the Secretary of the Army, and it is significant to note that the enactment of this statute extending the admiralty jurisdiction of the United States to damage caused by vessels on navigable water "notwithstanding that such damage or injury be done or consummated on land" preceded the use of Clause (g) in the permit issued on March 3, 1949. In the light of these considerations we hold that the broad language of Clause (g) was intended to, and does, preclude liability of the United States for negligence if the insertion of the clause was within powers validly delegated to the Secretary of the Army by Congress.

Edison next contends that the power to insert a clause of this type was beyond the powers validly delegable to the Secretary, in view of the congressional policy of broadly waiving sovereign immunity reflected by the Suits in Admiralty Act and the Federal Tort Claims Act. More specifically, Edison argues that the combined effect of these two

statutes is to impose liability for actions of its agents, servants and employees on the United States across the entire spectrum of governmental activity. Edison further says that the Government, in effect, is contending that the Secretary of the Army is seeking herein, by the utilization of Clause (g), to carve out an exception to the aforementioned congressional policy of waiving sovereign immunity, and that this is beyond the Secretary's powers.

The Government counters this argument by pointing out that under still subsisting statutory law, the Secretary of the Army has not only the broad statutory authority to, but also an affirmative duty under 33 U.S.C. sec. 1 to,

> "prescribe such regulations for the use * * * of the navigable waters of the United States as in his judgment the public necessity may require for the protection of life and property, or of operations of the United States in channel improvement * * *"

It is under the authority of this section that the Secretary has promulgated the regulation requiring the standard form of permit to be used by the Corps of Engineers prior to authorizing erection of any structure in navigable waters to include a clause identical to Clause (g). His reason for so doing is said by the Government to be the protection of operations of the United States in channel improvements.

There are a number of reported decisions which have upheld the validity of the delegation of power to the Secretary of the Army made by 33 U.S.C. sec. 1. The attacks on the constitutionality of this statute, all of which have been rejected, generally were premised on the theory that the statute attempted to delegate either legislative or judicial powers to the Secretary. Union Bridge Co. v. United States, 204 U.S. 364, 385, 27 S.Ct. 367, 51 L.Ed. 523 (1907); Monongahela Bridge Co. v. United States, 216 U.S. 177, 193, 30 S.Ct. 356, 54 L.Ed. 435 (1910); Hannibal Bridge Co. v.

United States, 221 U.S. 194, 205, 31 S. Ct. 603, 55 L.Ed. 699 (1911); Louisville Bridge Co. v. United States, 242 U.S. 409, 424, 37 S.Ct. 158, 61 L.Ed. 395 (1917); The Governor Warfield, 39 F. 2d 926 (D.C.N.Y.1930), aff'd. 48 F.2d 1069 (2nd Cir.1931); Ryan, et al v. Chicago, B. & Q. R. Co., 59 F.2d 137 (7th Cir.1932). None of the above cases discussed the terms and conditions of a permit issued by the Secretary for work done under governmental auspices.

Edison's argument would be more persuasive to this court if the Suits in Admiralty Act and the Federal Tort Claims Act, taken together, waived sovereign immunity for *all* governmental negligence. However, a reading of the Federal Tort Claims Act makes clear that sovereign immunity was not waived as to all tortious or even as to all negligent conduct, and, on the contrary, a substantial number of exceptions to the waiver of sovereign immunity by Congress were carved out in 28 U.S.C. § 2680. The significance of these exceptions in the particular type of activity involved herein, river improvements, appears from the discussion of governmental liability by the Supreme Court in United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). In *Muniz*, the Supreme Court considered what inference it should draw from the fact that the Federal Tort Claims Act as enacted was the culmination of a series of attempts to pass legislation to permit tort suits against the Government. The Court noted (at p. 155, 83 S.Ct. 1850) that going back to 1925 at least one bill was introduced in every Congress, with the exception of the 75th, until the Federal Tort Claims Act was passed by the 79th Congress in 1946. The Court further noted (at p. 156, 83 S.Ct. 1850) that 31 bills were introduced during this period, 6 of which had express provisions which barred suits by inmates of federal prisons. The Court then observed that no such retention of sovereign immunity to suits by prisoners was retained in the Tort Claims Act, from which the Court concluded that the omission of the provi-

sion prohibiting suits by prisoners was not inadvertent and it ruled that Congress had intended to waive immunity as to prisoner suits in the light of the legislative history so summarized.

The Court, however, added a footnote which appears material to the resolution of the instant case (p. 155, n. 9, 83 S.Ct. p. 1854):

> "Other than the exception for prisoners' claims, discussed in the text, the only remaining exceptions having no counterpart in the present Act barred liability for governmental activity relating to flood control, harbor and river work, and irrigation projects. To the extent that these activities constitute 'discretionary function[s],' the exception of 28 U.S.C. § 2680(a) *still preserves governmental immunity*. United States v. Ure, 225 F.2d 709 (C.A.9th Cir.); Coates v. United States, 181 F.2d 816, [19 A.L. R.2d 840] (C.A.8th Cir.); McGillic v. United States, [D.C.], 153 F.Supp. 565." (Emphasis added.)

Each of the cited cases exempted the Government from alleged negligence both in the planning and in the actual operation of flood control projects. In addition to the three cases cited by the Supreme Court above, similar rulings have been made in F. & M. Schaefer Brewing Co. v. United States, 121 F. Supp. 322 (E.D.N.Y.1954) and in Thomas v. United States, 81 F.Supp. 881 (W. D.Mo.1949). The *Schaefer* case presents a fact situation extremely close to the facts in the instant case. In that case, the Department of the Navy entered into a contract with a private contractor, Morris & Cummings Dredging Company, under the terms of which Morris & Cummings conducted dredging operations on behalf of the Navy in the vicinity of plaintiff's property for the purpose of berthing the aircraft carrier CORAL SEA after the vessel was launched from the Brooklyn Navy Yard where it was then under construction. The complaint alleged that the dredging was done negligently, as a result of which a bulkhead and dock on plaintiff's property allegedly collapsed some fourteen months later. The Court held that:

> "The Government's contention is correct that the complaint asserts a claim based upon the exercise or performance of a discretionary function of the Government within the meaning of the exception to the Federal Tort Claims Act."

In the *Thomas* case the complaint alleged that representatives of the Corps of Engineers of the War Department had "carelessly and negligently planned and caused to be installed such revetment at such angle to the main current of the Missouri River as to deflect and direct the flow of said current against and upon lands of the plaintiffs above described * * *" The Court held, in pertinent part (at p. 882):

> " * * * the details or method of carrying out the plan as submitted to and accepted by the Congress for the development of navigable streams for navigation or flood control under the direction of the Chief of Engineers for the War Department is a discretionary act within the meaning of Subsection (a) of Section 2680, Title 28, U.S.C.A., which would not render the Government liable for damage resulting from abuse of that discretion or any error or mistake made in carrying it out."

It cannot be gainsaid that the decision of the Secretary of the Army to cause a dredging of the river was a discretionary act on his part. Accordingly, the fact that Congress retained sovereign immunity as to river and harbor works, at least to the extent that they involve the discretionary exception set out in 28 U.S.C. § 2680, defeats appellant's argument that the Tort Claims Act waived *all* governmental immunity and that consequently the regulation enacted pursuant to 33 U.S.C. sec. 1 violates the intent of said waiver. It also is dispositive of Edison's contention that the Federal Tort Claims Act repealed 33 U.S.C. sec. 1 by implication.

We rule that there is no inconsistency between the policy enunciated by the Suits in Admiralty Act and the Federal Tort Claims Act, having in mind the exceptions to liability contained in the Tort Claims Act and the provisions of 33 U.S.C. § 1 directing the Secretary of the Army to make regulations appropriate for the "protection of the life and property or of the operations of the United States in channel improvement."

█ Finally, Edison argues that Clause (g) should be struck down as violative of public policy, relying primarily on Bisso v. Inland Waterways Corp., 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955). *Bisso*, however, enunciates a rule of contract law and arises in a context in which the Supreme Court ruled, in substance, that where two parties to a contract are of unequal bargaining power it is against public policy for the stronger of the two parties to force the weaker to accept a clause exculpating the stronger from liability for its own negligence.

The instant situation is totally distinguishable from *Bisso* in that Clause (g) does not appear in a contract. The permit in question was neither negotiated for nor sold, but was issued by the Secretary of the Army acting under discretionary authority clearly conferred on him by 33 U.S.C. sec. 1 et seq. If the insertion of such a clause under authority given to the Secretary be now thought to be against public policy, the entity enunciating that a policy clearly contained in a statutory grant of power to the Secretary is no longer held in favor should be the Congress and not this court.

The remaining contention is that certain undertakings by the Corps of Engineers to assure the safety of Edison's cables raised issues of material fact relating to estoppel, waiver, and a specific contractual duty. Under no view of the facts do we see any material issue raised by these precautionary efforts.

Affirmed.