**PACIFIC NORTHWEST BELL
TELEPHONE COMPANY,
Plaintiff-Appellee,**

v.

**UNITED STATES of America,
Defendant-Appellant.**

No. 74–3373.

United States Court of Appeals,
Ninth Circuit.

Feb. 4, 1977.

---

William E. Gwatkin, III, Asst. U. S. Atty. (argued), San Francisco, Cal., for defendant-appellant.

Donald J. Hagen (argued), Seattle, Wash., for plaintiff-appellee.

Before MERRILL and CHOY, Circuit Judges, and GRAY,* District Judge.

MERRILL, Circuit Judge:

The United States has taken this appeal from judgment of the district court, 378 F.Supp. 297 (W.D.Wash.1974), awarding the sum of $56,000 to Pacific Northwest Bell Telephone Company (Bell) for damages suffered by a submarine telephone cable on the bed of Lake Washington, a navigable body of water near Seattle. The cable had been placed in Lake Washington pursuant to a permit issued by the United States Army Corps of Engineers. It was fouled by the anchor of a buoy placed there by the United States Coast Guard. By regulation and by the language of the permit, the United States is relieved of liability for damage or injury caused by or resulting from operations undertaken by the United States for the conservation and improvement of navigation. The question presented by this appeal is whether the regulation and language of the permit relieving the United States from liability are inconsistent with and invalidated by the waiver of sovereign immunity provided by the Public Vessels Act and the Suits in Admiralty Act. The district

* Honorable William P. Gray, United States District Judge for the Central District of California, sitting by designation.

court held the regulation and permit condition to be invalid. We reverse.[1]

The Secretary of the Army has been given authority generally to prescribe regulations regarding navigable waters:

"It shall be the duty of the Secretary of the Army to prescribe such regulations for the use, administration, and navigation of the navigable waters of the United States as in his judgment the public necessity may require for the protection of life and property, or of operations of the United States in channel improvement, covering all matters not specifically delegated by law to some other executive department."

33 U.S.C. § 1. By the Rivers and Harbors Act of 1899, 33 U.S.C. § 403, Congress among other things expressly prohibited the creation of any obstruction to the navigable capacity of any of the waters of the United States, unless the work has first been recommended by the Chief of Engineers and authorized by the Secretary of the Army. In carrying out his delegated function of administering the laws enacted by Congress for the protection of navigation and navigable waters, the Secretary has issued a comprehensive set of regulations, one portion of which sets forth the requirements and conditions upon which obstructions may be placed and work may be performed in the navigable waters of the United States. 33 C.F.R. §§ 209.110–209.335 (1974).[2]

The requisite authorization from the Secretary of the Army is provided by a permit, 33 C.F.R. § 209.120 (1974), issued in the name of the Secretary by appropriate officers of the Army Corps of Engineers on such terms and conditions as may be prescribed, and without which any structure placed or work performed in the navigable waters of the United States is unlawful. 33 U.S.C. § 403. The requirement for a permit is applicable to submarine pipelines and cables which obstruct the navigable capacity of the waterway where they are placed and interfere with navigation by restricting the areas where vessels may safely anchor. *See* 33 C.F.R. § 209.130(b)(14) (1974).

Every permit for any kind of structure or work in navigable waters is subject to a number of standard conditions, 33 C.F.R. § 209.130(c)(2) (1974), one of which is that if future operations of the United States should require, or if in the opinion of the Secretary of the Army the structure or work should cause an unreasonable obstruction to navigation, the owner shall remove or alter the structure or work without expense to the United States. 33 C.F.R. § 209.130(c)(2)(vi) (1974).

On April 12, 1965, the Department of the Army issued the permit authorizing Bell to lay a submarine telephone cable in Lake Washington. The permit was expressly made subject to the standard conditions contained in the Army regulations. The condition that bears directly on this case, which is identical to one of the standard conditions in the regulations (33 C.F.R. § 209.130(c)(2)(vii) (1974)), is contained in clause (g) of the permit issued to Bell. Clause (g) reads as follows:

"That the United States shall in no case be liable for any damage or injury to the structure or work herein authorized which may be caused by or result from future operations undertaken by the Government for the conservation or improvement of navigation, or for other purposes, and no claim or right to compensation shall accrue from any such damage."

The cable was laid and placed in operation by Bell on or about May 1, 1965.

By 46 U.S.C. § 454, Congress authorized the Commandant of the Coast Guard to issue regulations to promote the safety of life on navigable waters during regattas or marine parades. Among the regulations so issued is one authorizing establishment of aids to navigation by the Coast Guard to

---

1. We thus find ourselves in agreement with the result in *Boston Edison Co. v. Great Lakes Dredge & Dock Co.*, 423 F.2d 891 (1st Cir. 1970).

2. Some of these regulations were modified after the dates involved in this case. References are to the regulations as they existed up to 1974.

mark the course of such events. 33 C.F.R. § 62.01–35(a) (1974).

A regatta, called the Seafair Unlimited Hydroplane Regatta, is conducted each year on Lake Washington. The sponsors of the 1972 regatta furnished the Coast Guard with a detailed survey drawing of the area in Lake Washington where the regatta was to be held and where buoys were to be set. The drawing, however, did not show the location of Bell's cable here involved. On July 26, 1972, as the Coast Guard buoy tender, FIR, was putting buoy "C" into place, the buoy's anchor fouled Bell's submarine cable, causing the damage that is the subject of this action.

The action was brought by Bell invoking the admiralty and maritime jurisdiction of the federal courts, and charging the United States with negligence in issuing the Seafair chart, which had not been revised to show Bell's cable area, and charging the Coast Guard with negligence in using such a chart, although an available current chart did show the area and a local notice to mariners had set forth its location. The United States denied negligence and as an affirmative defense alleged that Bell was precluded from recovery by the terms of the very permit granting it its cable rights in Lake Washington. Bell moved for summary judgment, contending that clause (g) of the permit was inconsistent with the waiver of sovereign immunity set forth in the Public Vessels Act, 46 U.S.C. § 781,[3] and the Suits in Admiralty Act, 46 U.S.C. § 742.[4] The district court agreed with Bell, found negligence per se, and granted summary judgment.

▬▬ We cannot agree with the district court in its view as to the effect of the waivers set forth in the two Acts. They do grant federal jurisdiction and constitute a consent by the government to be sued, but they can hardly be said to constitute a consent to judgment in all cases. Liability remains to be proved in each case. This is similar to the rule respecting suits brought under the Federal Tort Claims Act. That statute:

> " * * * confers jurisdiction to render judgment upon * * * claims. But it does not say that all claims must be allowed. * * * Jurisdiction of the defendant now exists where the defendant was immune from suit before; it remains for courts, in exercise of their jurisdiction, to determine whether any claim is recognizable in law."

*Feres v. United States,* 340 U.S. 135, 140–41, 71 S.Ct. 153, 156, 95 L.Ed. 152 (1940).

The Public Vessels Act and the Suits in Admiralty Act do not purport to strip the government of the power to control the rights of persons to place obstructions to navigation in navigable waters of the United States. In absence of some more explicit indication of intent, the power of the United States must be held to continue unimpaired to deny permits or, in granting them, to impose conditions that are relevant to the regulatory purpose.

The effect of the condition here imposed is simply to place upon the permittee the risk of damage to the permitted structure resulting from activity of the United States that is undertaken to meet its continuing obligations respecting navigation. The condition is not, then, an outright exercise of sovereign power for the protection of the sovereign—such an exercise as might be said to have been foregone by the waiver of immunity. Rather, it is an aid to the carrying out of special duties and responsibilities

---

**3.** "A libel in personam in admiralty may be brought against the United States, or a petition impleading the United States, for damages caused by a public vessel of the United States, and for compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States: *Provided,* That the cause of action arose after the 6th day of April, 1920."

**4.** "In cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States or against any corporation mentioned in section 741 of this title * * *."

imposed on the sovereign by law, and in that respect deals with problems that the very grant or permit would operate to create. It is limited in its scope to the area occupied by those responsibilities and those special problems. In our judgment it is, then, rational and relevant to the regulatory purpose and falls within the regulatory power.

This does not serve to place the United States in a position more favorable than that which a private person would occupy, contrary to the intent traditionally attributed to provisions for waiver of sovereign immunity. See Johnson, *Liability of the United States for Maritime Torts,* 10 U.Rich.L.Rev. 527, 529 (1976). The private person hypothesized in these circumstances is the owner of land from whom an easement is sought by one having no power to compel a grant or demand passage. The question is whether such a private person, in his power to attach conditions to an easement he was not otherwise obliged to grant, is less favored in the law than the United States is here held to be. We do not perceive that he is.

Finally, we note that holding clause (g) to be unenforceable would do more than relieve Bell of a condition it regards as improper. It would, in effect, operate to render persons incompetent to secure desired benefits by way of contract, since they could no longer effectively commit themselves to conditions they may be entirely willing to assume in order to obtain their permit. If such a result is to follow from a waiver of sovereign immunity it should, in our judgment, be by a more clear expression of legislative intent.

We conclude that clause (g) is consistent with the provisions of both the Public Vessels Act and the Suits in Admiralty Act and is within the delegated authority of the Secretary of the Army.[5]

---

5. Appellant has also argued that the dominant navigational servitude of the United States, *see United States v. Virginia Elec. & Power Co.,* 365 U.S. 624, 627–28, 81 S.Ct. 784, 5 L.Ed.2d 838 (1961); *United States v. Chicago, Milwaukee, St. Paul & Pac. R. Co.,* 312 U.S. 592, 596–97, 61 S.Ct. 772, 85 L.Ed. 1064 (1941); *United States v. Appalachian Elec. Power Co.,* 311 U.S. 377, 423–24, 61 S.Ct. 291, 85 L.Ed. 243 (1941), precludes recovery by Bell in this case. Since we have found that recovery is barred on other grounds we need not reach this issue.

Summary judgment is reversed. The case is remanded for further proceedings.